# The Phœnix Insurance Company

## v.

# Abraham Tucker.

1. INSURANCE—*waiver of defects in proof of loss.* Where proofs of a loss are made out and delivered to an insurance company within the time prescribed by the policy, it is its duty to point out specifically any objections it may have to the same, and if it does not do so, it will be estopped from afterwards making such objections.

2. If, upon making out proofs of loss, the company makes certain specific objections, it thereby waives all others, and when the proofs are amended with a view to obviate the objections, and the company is furnished with the amended proof, and it is not acceptable, it should renew its objections, and if it does not do so until the time has expired for making out proofs, it will be estopped from doing so afterwards.

3. If an insurance company, after proofs of loss have been made out, refuse to pay a part or the whole of the claim of the assured, placing its refusal on some other distinct ground than that of defective proofs, it will be estopped, when sued on account of the loss, from setting up as a defence that the proofs of loss were insufficient.

4. SAME—*title not truly stated in policy.* Where the nature and condition of the title of the assured is fully made known to the agent of the insurance company taking the application, a recovery on the policy for a loss will not be

defeated on the ground the character of the title was not properly inserted in the policy. Where the agent, knowing the facts, makes out the policy, if it does not speak the truth, the company alone will be responsible for it, and will not be heard to complain on that ground.

5. SAME—*leaving the premises vacant and unoccupied.* Where a policy of insurance provides that if the insured premises be left vacant or unoccupied, without the consent of the company, the policy shall be of no force or effect, if the assured leaves the premises actually vacant, that is, without any occupant for an unreasonable length of time, the *animus revertendi*, however clearly shown, will not, it seems, relieve him from the operation of the condition, nor will the fact that the assured has, at the time of the loss, a bed and other articles of furniture in the building protect him from the effect of such a condition.

6. In this case the owner of a dwelling house upon which he had procured an insurance, having determined to remove from the State, rented the premises to another, the tenant to take possession on a Saturday. On the Thursday night preceding an attempt was made to destroy the building, but the owner, being upon the premises, discovered the fire in time to extinguish it before any serious damage was done. On the next day—Friday—the assured made sale of such articles of property as he did not wish to remove, and on the evening of that day his family left the premises without any intention of returning. The assured remained on the premises Friday and Friday night, having retained with him a bed, bedding, and some other articles of household goods of small value, his family in the meantime stopping in the city, about a mile away. The tenant to whom the premises had been leased did not take possession on the Saturday as was intended, but the assured remained there all that day and until about nine o'clock Saturday night, when he went into the city and spent the balance of the night with his family. On Sunday he returned to the premises and remained there till seven o'clock at night, when he again went to the city and spent the night there, leaving his bed, bedding, etc., in the house, and that night, while he was in the city, the house was destroyed by fire,—evidently the work of an incendiary: *Held*, in a suit upon the policy, the court could not say, as a matter of law, upon this state of facts, that the premises were vacant and unoccupied at the time of the loss, within the meaning of the prohibitory clause on that subject in the policy.

7. LAW AND FACT. What is meant by the term "vacant and unoccupied," in a policy of insurance, as working a forfeiture of the policy, is a question of law, but whether a house was, at the time of a loss, vacant and unoccupied, within the meaning of the policy, is a question of fact for the jury.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

5—92 ILL.

Messrs. ROWELL & HAMILTON, for the appellant.

Mr. M. W. PACKARD, for the appellee.

Mr. JUSTICE MULKEY* delivered the opinion of the Court:

This is an appeal from a judgment rendered in the McLean county circuit court, in favor of appellee, and against appellant, upon a policy of insurance against loss or damage by fire, issued by the latter upon the dwelling house of appellee situated on a small fruit farm about a mile south of the city of Bloomington.

Several reasons are urged for a reversal of this judgment. It is claimed, in the first place, that "the proofs of loss were not made in accordance with the provisions of the policy." The evidence bearing on this point shows that M. W. Packard, shortly after the destruction of the house by fire, made out proofs of loss and inclosed them to the company by mail. The company, after having examined them, returned them to Packard with two specific objections, namely:

1. They were not full enough in giving the title to the property.

2. The sketch and diagram of the building were not full enough.

Packard thereupon amended the proofs in these two respects and returned them to the company, and he swears that it is his best recollection that no further specific objections were made to them. Indeed, it does not appear that complaint of any kind was made to proofs of loss after they were amended and returned by Packard. It also further appears, that after proofs of loss had been furnished the company, in the manner just stated, appellant proffered to pay appellee $200 on account of the loss, but refused to pay more, basing its refusal on other grounds than defective proofs.

---

*NOTE—Mr. JUSTICE MULKEY came upon the Bench as the successor of Mr. JUSTICE BAKER, at the June term, 1879, and this case was decided subsequent to that time.

Under the circumstances, we regard it as immaterial whether the proofs, as finally made out, were sufficient or not,—for whatever defects or irregularities may have occurred in making them out or amending them must be deemed to have been waived by appellant. The law is well settled, that where proofs of loss are made out and delivered to an insurance company within the time prescribed by the policy, it is its duty to point out specifically any objections it may have to the proofs as made out. Good faith and fair dealing require this to be done, and if it is not done, the company can not afterwards be heard to make such objections. It is in law estopped from doing so. And on the same principle, if, upon making out proofs of loss, the company make certain specified objections, it thereby waives all other objections not specifically pointed out; and when they are amended with a view of obviating these specified objections, it is the duty of the company, on being furnished with the amended proofs, if the amendment does not make them acceptable, to renew its objections, and if it does not do so at the time, and the assured is lulled into security until the time limited by the policy for making out proofs has expired, it will be estopped from doing so afterwards. So, if an insurance company, after proofs have been made out, refuse to pay a part or the whole of the assured's claim, basing such refusal on some other distinct ground than that of defective proofs, it will be estopped, when sued on account of the loss, from setting up as a defence that the proofs of loss were insufficient.

The principles here announced are fully recognized by this court in a number of carefully considered cases. *The Great Western Insurance Co.* v. *Staaden*, 26 Ill. 365; *Insurance Co. of North America* v. *Hope*, 58 id. 75; *Winnesheik Insurance Co.* v. *Schueller*, 60 id. 465; *The Lycoming Fire Insurance Co.* v. *Dunmore*, 75 id. 14.

It is also objected, that the true state of the assured's title to the property insured was not disclosed to the company and inserted in the policy at the time the insurance was effected, as required by one of the conditions of the policy. The evi-

dence shows that the insurance was originally effected through Beal, as agent of the Bloomington Insurance Company, and that a policy was first issued to the assured by that company, but was subsequently, through the agency of Beal, and by consent of the parties, canceled, and the policy sued on issued in its stead.

The testimony of Abraham Tucker, which is uncontradicted and unquestioned, shows that Beal was not only an agent for the Bloomington Insurance Company at the time the policy was issued by that company, but was also an agent of appellant at the time the policy sued on was issued by defendant.

It further appears, from his testimony, that when the exchange of policies was made, witness went over to the office of appellant with Beal, and the matter of appellee's title was there talked over and fully explained in the presence of Lambert & Pillsbury, who seem also to have been acting on behalf of appellant. At any rate Lambert subsequently brought the policy out to appellee's house and delivered it to him. But whether Lambert & Pillsbury were agents of the company or not is immaterial, for, without question, Beal, through whom the insurance was effected, was such agent. The nature and condition of appellee's title were, as already stated, fully made known and explained to him on more than one occasion, and if they were not properly inserted in the policy it was not appellee's fault. He had nothing to do with the making out of the policy. That was done by Beal as appellant's agent, and if the policy was not made to speak the facts, appellant alone is responsible for it and can not now be heard to complain on that ground. *The Atlantic Insurance Co.* v. *Wright*, 22 Ill. 462; *The Commercial Insurance Co.* v. *Spankneble*, 52 id. 53.

Again, it is objected, that in violation of a condition in the policy, the house, at the time of its destruction by fire, was vacant and unoccupied. If this be true as a fact, it is fatal to appellee's right of recovery, and the judgment of the court below must, for that reason if no other, be reversed. The

policy in question, among other provisions, contains the follow-
ing: " And it is agreed and declared to˙ be the true intent
and meaning of the parties hereto, that if the above mentioned
premises   *   *   *   be vacant or unoccupied or not in use,
unless agreed to by this corporation in writing upon this
policy, from thenceforth so long as the same shall be vacant
or unoccupied, or not in use, or the hazard otherwise increased,
*   *   *   this policy shall be of no force or effect."

It appears, from the evidence, that on the night of November
15, 1874, the same being Sunday, the dwelling house covered
by the policy was destroyed by fire. The destruction was total,
and evidently the work of an incendiary. On the Thursday
night previous, an unsuccessful attempt had been made to de-
stroy it in the same way, but it was discovered by appellee in
time to extinguish the fire before any serious damage occurred.

It further appears, from the evidence, that some time before
the loss, appellee had determined to leave the premises and
move to Nevada, and for several days before the fire he was
actively engaged in making preparations to do so. He had
already rented the premises to another, who was to have taken
possession on Saturday, but in consequence of rain he was
unable to do so. On Friday preceding the fire appellee made
sale of such articles of property as. he did not wish to take
with him. On the evening of that day his family left the
premises without any intention of returning, at least until
after appellee's return from Nevada, where he subsequently
went. Appellee remained on the premises Friday and Friday
night, having retained with him a bed, bedding and some other
articles of household goods of comparatively little value, his
family in the meantime having stopped in the city waiting
until he could perfect his arrangements for leaving. He also
remained on the premises all the next day and until about
nine o'clock of the night of that day, when he went into the
city and spent the balance of the night—we presume with his
family. On Sunday he returned to the premises and remained
there till seven o'clock at night, when he again went back to

the city and spent the night there, leaving his bed, bedding, etc., in the house, and that night, while he was in the city, it was, as before stated, destroyed by fire.

These are the simple, unvarnished facts as disclosed by the record. And the question now presented is, can this court upon this state of facts say, as matter of law, that, within the meaning of the policy, the premises in question were vacant and unoccupied at the time of the fire?

The condition in the policy rendering it inoperative in the event the premises should become vacant and unoccupied, was one that appellant had a right to exact, and when appellee accepted the policy with that provision in it, he became bound by it, and it is the duty of courts to enforce it like any other contract. Now, what is meant by the term vacant or unoccupied, in the connection in which it occurs in the policy, is a question of law; but whether the house was, at the time of the fire, within the meaning of the policy, vacant and unoccupied, was a question of fact for the determination of the jury. In this particular case the jury found, as a matter of fact, that the premises were not, at the time of the fire, vacant and unoccupied. But, as in all other cases, if the finding of the jury was manifestly against the evidence, it was the duty of the court to have set the verdict aside and granted a new trial.

This court has had occasion to determine, as a matter of law, what is meant by the term vacant and unoccupied, in the condition of a policy of insurance like the one now under consideration.

In *American Insurance Co.* v. *Padfield et al.* 78 Ill. 167, it was said, with reference to a similar condition, " A fair and reasonable construction of the language of vacant and unoccupied is, that it should be without an occupant—without any person living in it. * * * The language is not used in a technical, but popular sense." This, then, must be taken to be the meaning of the term, and it results that the real inquiry in this case is, whether appellee might, at the time of the fire, be regarded, within the meaning of the policy, still living

in the house in question, for it is manifest his person was not in the house at the time.

It must be conceded, also, that the mere fact that appellee had, at the time of the fire, a bed, bedding and other articles in the house would not, of itself, have protected him from the operation of the provision in question. And it is, moreover, equally certain, that where the assured leaves the premises actually vacant—that is, without any occupant in them for an unreasonable length of time—the *animus revertendi* will not, however clearly it may appear, relieve him from the operation of such a condition in the policy. Now, this case is not, in some respects, like the case last cited. There, the premises covered by the policy were in the possession of a tenant at the time the insurance was effected, and the tenant had entirely left the premises for some two months before the fire, and the assured had been notified of this fact and had taken no steps to supply his place with another tenant. But the case was like the present in this, that there were some household goods and effects in the building insured during the time it was so vacated and at the time of the fire.

The object of courts, when enforcing a provision in a policy like this, should be to endeavor to so construe it as to give effect to what might reasonably be supposed to have been the intention of the parties when they consented to it. It will hardly be contended that such a condition requires that the assured, or some of his family, should be actually in the house all the time. He may be living alone, or he may have only a wife. In such cases, business, social and religious duties, would necessarily require the premises, in the literal sense of the term, to be often vacant and unoccupied. Suppose, in such case, the assured and his wife, being the only members of the family, go to spend a night with a neighbor to set up with the sick, does his policy, having such a clause in it, become immediately suspended when he and his wife pass from under their own roof? And does the assured, while at the house of his neighbor, discharging a duty imposed alike by religion

and humanity, cease to be an occupant, within the meaning of the policy? Could it have been intended by the company, or the assured, that if a loss occurred under such circumstances the company would be relieved from all liability? We do not think so. And in such cases the liability could hardly be made to depend on the urgency or necessities that called the assured away.

Suppose the assured and his wife, instead of going to set up with the sick, go to attend a social gathering, would he lose the benefit of his policy if a fire should occur while there? We think not. Courts could hardly go into an inquiry as to the reasons which lead to a temporary absence, with a view of determining whether the operation of the policy was suspended during such absence. If, then, one having a policy of this kind may go to church, or spend a day or night with a neighbor, without ceasing to be an occupant of the premises, within the meaning of the policy, it follows that appellee going to town on Saturday or Sunday night would not, of itself, have had the effect of relieving appellant from the obligations imposed by the policy,—for, the mere fact that he intended to leave as soon as he could surrender the possession to his tenant would not have the effect of depriving him of such rights as other persons might, under a similar policy, exercise, who had no such intention of leaving. The circumstances under which appellee was placed are peculiar. He finds it necessary for him to change his residence. He well understands it will not do for him to start on his journey to Nevada leaving the premises unoccupied. He had paid the premium on his policy, and he was entitled to its benefits.

He leases the premises for three years to another, who wants to take possession on Saturday, and it is arranged and intended that he shall do so.

Accordingly, on Friday evening the assured removes most of his effects out of the house, and sends his family to the city, about a mile distant, to remain there till he can join them. He remains over, keeping a bed and bedding, and some other

articles for his use while there, expecting the next morning to surrender the possession to his tenant; but next day brings with it a rain, which prevents the tenant from coming, and so of course the change of occupancy can not be properly effected till Monday; yet the assured remains there on Saturday and Sunday, as he says himself, for the purpose of taking care of the property; but in the meantime the property is destroyed by fire.

All these facts show a manifest purpose on his part not to leave the premises till they were turned over to his tenant,—otherwise he would have gone with his family at the start. And the fact that he spent Saturday and Sunday nights in the city did not have the effect to make the premises vacant and unoccupied in the sense of the policy. He and his whole family might have spent a night there without forfeiting his rights under it, provided they went with the intention of returning. Nor could the fact that his family did not intend to return make any difference, so long as he remained there himself. He was the head of the family. His domicil and home, in law, were theirs; and their rights, with respect to its occupancy and possession, must be regarded as subordinate to his.

Until he had finally left, it was immaterial where they were, so far as his rights under the policy were concerned. The facts simply show that appellee was making preparations to vacate and give the possession and occupancy to another. The thing was merely *in fieri*, not consummated.

We are, therefore, of opinion that the premises were not, within the meaning of the policy, vacant and unoccupied. This was really the only important or doubtful question in the case, if indeed it can be said to be doubtful. Nothing could be gained by a review of the authorities on this question. They are all in accord upon the proposition that to permit the insured premises to become vacant and unoccupied avoids the policy. But it is believed that no case can be found where premises have been held to be vacant and unoccupied under circumstances

similar to those appearing in this case, and even if such case could be found we would not feel inclined to follow it. Such a provision in a policy must have a reasonable, practical construction, and not be made a mere snare to catch the unwary.

While some of the instructions for appellee are justly subject to criticism, yet we do not believe that the jury was misled by them. For if, under the facts, the premises were not vacant and unoccupied, as we hold they were not, then the judgment is right, whatever the instructions may have been.

We are of opinion that the judgment should be affirmed.

*Judgment affirmed.*

WALKER J., and SCHOLFIELD, J.: We do not agree either in the reasoning or conclusion of this opinion. Unless the contract of the parties is affected by fraud or mistake, it should be enforced as written—and where it is thus affected, the remedy is in equity.