CARR *v.* ROGER WILLIAMS INS. CO.

CARR *v.* FIRE ASSOCIATION OF PHILADELPHIA.

When a notice of loss, given to an insurer, contains a statement that the property was not occupied, and that the insurer was informed, when the policy was issued, that the property would not be occupied, the insurer's reply denying his liability on the ground that his consent was not endorsed on the policy is evidence of the fact of information alleged in the notice, and not denied in the reply.

The term "premises," as ordinarily used in conditions in policies of insurance, does not apply to personal property when there is no insurance upon the buildings containing the property and when the buildings and the property are owned by different persons.

Whether "premises" are vacant, or unoccupied, is a question of fact to be determined by the trier of the facts.

Whether a condition in an insurance policy, that if the premises shall become vacant or unoccupied, applies where there has been no change in the condition of the property between the date of the policy and the burning—*quære*.

ASSUMPSIT, upon policies of insurance. The defendant company in the first named case may be designated "A," and in the second "B." Each policy insures one Fifield "$1000. on his undivided half of machinery, shafting, belting, tools and fixtures contained in a two story frame paper mill and additions to same known as the Kearsarge paper mill situate in Andover N. H. Loss if any payable to R. C. Carr as his interest may appear."

The property was burned Sept. 15, 1878, and the plaintiff held a mortgage made by Fifield to secure notes exceeding the amount of the policies. The mill was not operated at the date of the policies, nor at any time after that time.

Policy in company "A" contained a condition that if the premises should become vacant or unoccupied the policy should be void.

Policy in company "B" contained the following condition: "This policy will not cover unoccupied buildings, unless insured as such, and if the premises insured shall be vacated and so remain for ten days without notice to this association, this policy shall cease and determine." The defendants moved for a nonsuit.

*Shirley & Carr*, for the plaintiff. I. The facts set out in the case and amendments are clearly "evidence of a waiver of the terms of the policies in regard to the provisions as to a vacancy." The letters of January 3 and February 8, 1879, estop the defendants from setting up that the policies were not duly issued by the Laconia and Concord agencies. Whatever was done by the resident officers of these companies, or by their general agents at Concord and Laconia, was done by these corporations respectively.

The proofs are in the hands of the court. The printed part was necessarily the work of the companies, and the part written in by Smith was also the work of the companies. The part written in by the direction of Fifield necessarily brought the facts therein stated to their knowledge. The letters of January 3 and February 8, referred to, show beyond the possibility of a doubt that Mr. Davenport, the president of the Roger Williams, and Mr. Pope, the general agent of the Fire Association, not only had these proofs under their eyes when they wrote these letters, but also that particu-

lar part written in by their agent and by Fifield,—and with that knowledge made the answers they did. The astute managers of these companies, with this distinct notice before them, saw fit to specify and particularize the grounds of their defence.

By their silence when the fact that they had due notice was thrust in their faces, and their specification of their grounds of defence, they perpetrated a legal fraud upon the plaintiff. The plaintiff, acting in good faith, with these letters before him, brought his suits and incurred heavy expenses. It would be a double fraud upon the plaintiff, if the defendants, at this late day, can be permitted to set up a ground of defence about which they were silent when it was their duty to speak, if at all, and abandon the grounds upon which alone they had led the plaintiff to suppose they relied. *Webster* v. *Phenix Ins. Co.*, 36 Wis. 67; *Brink* v. *Hanover Fire Ins. Co.*, 80 N. Y. 108–113, *Church*, C. J.; *Girard Life Ins., &c., Co.* v. *Mutual Life Ins. Co. of New York*, 97 Penn. St. 15; *Pennsylvania Fire Ins. Co.* v. *Kittle*, 39 Mich. 51; *Castner* v. *Farmers' Mutual Ins. Co.*, 46 Mich. 15; *Knox* v. *Lycoming Ins. Co.*, 50 Wis. 671.

As bearing upon this question of waiver, we desire to call the special attention of the court to another point. Mr. Davenport and Mr. Pope, in their letters, assume that the policies were void, no matter how many times or how often they were notified of the vacancy or non-operation—unless the consent of the company was endorsed in a special way upon the policies. This explains, beyond a doubt, why they attached so little consequence to the question of notice, and waived it. If they mistook the law, the companies and not the plaintiff must suffer the consequences. If the plaintiff was bound to give notice, the policies certainly were not avoided until after the companies had given him due notice to that effect. *Wakefield* v. *Orient Ins. Co.*, 50 Wis. 532.

II. The policies have no reference to the building, except as descriptive of location. Neither the plaintiff nor Fifield ever owned the building or any interest therein. They never had even a lease in writing. but another person had the rightful occupation of the premises until he abandoned the same. This was conceded at the trial when we offered to prove the facts.

These companies insure real or personal property, or both. The policy shows that nothing but personalty was insured here. If they had owned the real estate, the policy might have been void as respects the real estate, and good as respects the personalty. *Merrill* v. *The Agricultural Ins. Co.*, 73 N. Y. 452–468.

The provision in the policy of the Roger Williams Co. was, "if the premises should become vacant and unoccupied," etc. The premises were vacant and unoccupied when the policy was issued, if they ever were. They did not become so. It is exceedingly clear, therefore, that the defendants do not bring themselves within the words of the policy. These policies, as a rule, directly or by

implication, rest on the following covenant or representations,— first, that the insured owned or had a valuable interest in the property insured at the time the insurance was effected; and, second, that it shall become void by the alienation of the property insured.

The insured does not covenant that he will, at some indefinite time in the future, own an interest in the property, but his representation is that he owned the property at or before the date of the policy. The provision against alienation is not a warranty or representation that he never alienated the property, but that he will suffer certain consequences if he alienates it in the future.

A provision that a policy would be invalid if the premises were vacant or unoccupied at some time before the policy was issued, would be as much of a novelty as the transposition of the two provisions we have just discussed. The provision that the policy shall be avoided by non-occupation, like that in relation to alienation, looks forward, not backward.

If the company had wished, it could have made the language broad enough to cover the present, the past, and the future. It is enough to say they have made no such attempt, and the court ought not to go out of its way to give the language, contrary to the rule in forfeitures, an interpretation which is clearly neither literal nor reasonable. We have looked through a host of cases in which essentially the same language is used as here. Of these, *Wakefield* v. *Orient Ins. Co.*, *supra*, is an example. But we have been unable to find a single suggestion, on the part of counsel or court, that the words if the premises insured shall " become vacant," etc., had any reference whatever except to the future.

*Barnard & Barnard*, for the defendants. I. The defendants claim that they are not liable, because the buildings, both at the time the insurance was effected and at the time of the fire, were unoccupied, and no notice had been given them nor indorsed on the policies, as required by the terms of the contract. The hazard of risks of this class is largely determined by the question of occupancy or non-occupancy,—in fact, changes entirely the character of the risk. As the buildings were unoccupied, and as neither the plaintiff nor Mr. Fifield had any communication with any one in regard to the insurance except with Morrill & Danforth, it becomes material to know for whom they were acting.

1. They were not in fact agents of the defendant companies.

2. The defendant companies in fact never held them out as their agents.

3. They in fact never held themselves out as agents of the defendants with the knowledge of the companies.

On this state of facts it is clear that Morrill & Danforth were not the agents of the companies, but of the party who employed them. Sto. Ag. (3d ed.), *s.* 31, *p.* 32.

Again, the terms of the contract settle the question as to whom

Morrill & Danforth represented. Sec. IX of the policy provides as follows:

" It is a part of this contract, that any person other than the assured, who may have procured this insurance to be taken by this Association, shall be deemed to be the agent of the assured named in this policy, and not of this Association under any circumstances whatever, or in any transaction relating to this insurance."

II. The action should have been brought in the name of Fifield, the person from whom the consideration of the promise moved, and as being the person who procured the insurance and paid the premium. *Hadley* v. *Ins. Co.*, 55 N. H. 110; *Chamberlain* v. *Ins. Co.*, 55 N. H. 249.

III. What are the respective rights of the parties to a contract of insurance, when no questions are asked by the insurer. and nothing is said by the insured?

These questions have to be considered in the light of the contract as made by the parties and the surrounding circumstances. We think the true rule applicable to such cases and under such circumstances is, that the insurer takes the property with the ordinary risks attending it; but if, from any cause, there are facts existing which increase the risk beyond the ordinary hazards of such property, the party applying is bound to disclose them, or it will be regarded as a concealment of material facts which would avoid the policy. *Daniels* v. *Hudson River Fire Ins. Co.*, 12 Cush. 425; *Houghton* v. *Manf. Mut. Fire Ins. Co.*, 8 Met. 114; *Clark* v. *Manf. Ins. Co.*, 8 How. 569; *Columbia Ins. Co. of Alexandria* v. *Lawrence*, 10 Pet. 507; 1 Benn. F. I. Cas. 668; Ang. Ins., *s.* 175; 1 Arn. Ins. 536; *Boggs & Leathe* v. *Am. Ins. Co.*, 30 Mo. 63; May Ins., *s.* 208, and authorities; *Curry* v. *Commonwealth Ins. Co.*, 10 Pick. 535; May Ins , *c.* 8, Concealment.

IV. There must be knowledge to establish a waiver. *Frost* v. *Ins. Co.*, 5 Denio 154; *Viall* v. *Ins. Co.*, 19 Barb. 440; *Carroll* v. *Ins. Co.*, 38 Barb. 402; *Geo. Home Ins. Co.* v. *Kinnier's Adm'x*, 28 Grat. 88; *Viele* v. *Germania Ins. Co.*, 26 Iowa 9; *Diehl* v. *Ins. Co.*, 58 Penn. St. 443; Big. Est. 506; Wood Fire Ins., *s.* 436–497; *Webster* v. *Phœnix Ins. Co.*, 36 Wis. 67.

Acts that merely indicate that the defendant is getting information to enable him to make an election, and which do not change the status of the parties or involve any expense to the other party, do not constitute a waiver. *Jewett* v. *Home Ins. Co.*, 29 Iowa 562.

V. The contents of the building, which form the subject-matter of this insurance, are to be considered as separated and different in the character of the risk from the building itself. *Robinson* v. *Ins. Co.*, 27 N. J. Law (3 Dutch.) 134.

STANLEY, J. The motion for a nonsuit is founded on the fact that, at the time of the fire, the buildings containing the property insured were unoccupied. Assuming this to be so, it was compe-

tent for the defendants to waive this provision of the contract of insurance, and if there was competent evidence of such waiver the motion was properly denied.

The policies were obtained through Morrill & Danforth, who were general insurance agents, but were not specially appointed agents of the defendants. The plaintiff applied to them, informing them that Fifield had purchased an interest in the property, and that he held a mortgage upon Fifield's interest, and requesting them to examine the property, stating the amount of insurance wanted, and the way in which the building and machinery were used. Morrill & Danforth replied that they were well acquainted with the mill; that they had a full survey of it, and, if the plaintiff desired insurance, it was only necessary that he should state the amount. In September, 1876, Fifield told Morrill & Danforth the mill was not running, and that it could not be run all the time owing to the lack of water. Again, in September, 1877, Fifield told Morrill & Danforth that the mill might not run all the time. Neither the plaintiff nor Fifield knew that Morrill & Danforth were not the authorized agents of the defendants.

Soon after the fire, Smith, the defendants' agent, told Fifield it was necessary for him to make out a schedule of the loss and send it to the defendants, at the same time insisting that the defendants were not liable by reason of the non-occupation or non-operation of the mill. The schedule was sent as requested, to which Smith replied, requesting another, and giving directions what it should contain and how it should be executed. It was prepared and forwarded to the defendants, and, about two months after, the plaintiff having received no reply, his attorney wrote for an explanation. Smith replied that no schedule such as was required had been received. The attorney prepared and sent such a schedule, stating therein that "the mill was last operated by Wm. Gordon, who leased it from assured, on or about April 1, 1877, for fourteen months. After running it for some six months more or less, Gordon abandoned the property, which has since been unoccupied and idle." To this the plaintiff caused to be added the following,— "of which said company had due notice, and said company was duly notified in the outset that, owing to the nature of the business and the lack of a constant supply of water, said machinery would necessarily be idle a part of the time ;" and the schedules were then duly executed and sent to the defendants, who acknowledged their receipt, and informed the plaintiff that they admitted no liability "for the reason that the said policy by its conditions was rendered void from the fact that the property was unoccupied and inoperative at the time of the fire, and had been so for months previous, and no consent of the company was endorsed on the policy as the conditions require."

There was no denial of the statement in the schedule that the defendants had notice and were fully informed at the outset that

the machinery would necessarily be idle a part of the time.    After receiving the defendants' answer to the statements in the last schedule sent, the plaintiff brought these suits.

Assuming that the condition as to occupation applies to this case, there was evidence on which the jury might have found a waiver.   The fact that the defendants did not deny knowledge regarding the occupation of the premises, but placed their defence on the sole ground that their consent was not endorsed on the policy, was evidence from which, unexplained, the jury would have been warranted in finding that they did know the facts in regard to occupation that were stated in the schedule of loss.    The defendants' answers to the last schedule of loss sent them were, in legal effect, a confession and an attempted avoidance, an admission of knowledge and an endeavor to evade the force of it.    If, with full information on the subject of the use and occupation of the property insured, the defendants issued the policies, it is immaterial whether their consent was endorsed or not.    By issuing them they waived all conditions which they knew or had reason to believe were violated.   *Marshall* v. *Columbian Ins. Co.*, 27 N. H. 157; *Campbell* v. *Ins. Co.*, 37 N. H. 35;  *Taylor* v. *Ins. Co.*, 51 N. H. 50; May Fire Ins. 605, 627 ; Wood Ins., ss. 496, 497.    The fact that the defendants required schedules of the loss after they were informed of the facts upon which they rely as a defence, was competent on the question of waiver of the alleged breach of the conditions as to occupation.    When Smith, the defendants' agent, was informed of the non-occupation, he told the plaintiff it was necessary to make out a schedule of the loss and send to the defendants; and he called for a second and a third.    It would not be unreasonable for the plaintiff to infer, that while the defendants might not be legally liable because there was a breach of the conditions of the policies, they did not intend to insist on such breach as a defence against the plaintiff's claim under them.    The claim that the policies were void on the ground of non-occupation, and the calling for proofs, which were only necessary upon the theory that they were valid, were inconsistent; and the fact that the call for the proofs was subsequent to the knowledge of facts which might be insisted on as a reason for avoiding their liability, afforded evidence of a waiver of the breach of the conditions.    What weight it should receive was for the jury.    The motion for a nonsuit was properly denied on this ground.

But there is another ground on which the motion was properly denied.    Neither the insured nor the plaintiff owned the building or had any interest therein except as lessee, and the policy did not cover the building.    The insurance was upon " the machinery, shafting, belting, tools, and fixtures contained in a two-story frame building and additions to same, known as the Kearsarge Paper Mill."    The mention of the building is merely descriptive of the location of the property.    The property being movable, it was im-

portant to state its location to distinguish it from other property of the same kind. The description would not necessarily have been different if the property had been stored. The conditions, the breach of which the defendants claim avoids the policies, have no application to the facts of these cases. They relate to the building and nothing else. The term "premises" does not include and is never used to designate personal property. It is used, both in law and in common speech, to indicate lands and tenements. *Robinson* v. *Ins. Co.*, 27 N. J. Law 134; *Howard Fire Ins. Co.* v. *Cornick*, 24 Ill. 455. The connection in which the term is used indicates no intention to use it in any but its natural and ordinary sense. But to defeat the plaintiff's recovery we are compelled to find that there was such an intention, and to give to the word a strained and unusual signification. We have found no case in which it is even hinted that the word "premises" is ever used in connection with personal property only. If the insured had owned the building, and the policy had covered the building as well as the machinery, it might be claimed that the condition relating to occupancy was applicable to both building and machinery, and other property described in the policies; but the fact that the title to real and personal property is in different hands, coupled with the further fact that we are compelled to give to the word "premises" an unusual and unnatural meaning, sustains the view that these conditions have no application to this case. And when we consider that the policies cover personal property and nothing else, because the insured had no insurable interest in the real estate, the inference fairly to be drawn is, that at least one of the parties to the contract did not understand that they were making a contract whereby they were bound to keep their machinery in motion if they would have it insured.

But if it is admitted that the conditions as to occupation and vacancy apply to such property as is described in these policies, we cannot say as matter of law that the plaintiff cannot recover. The question what constitutes vacancy or non-occupation is one of law and fact, to be determined by the trier of the facts. It depends on a variety of circumstances, among which are the situation and surroundings of the property insured, its uses and purposes, and the like. No definite and inflexible rule can be drawn that shall apply alike to all cases. The line between occupancy and unoccupancy, vacancy and the reverse, cannot be definitely drawn. The question must be decided in view of all the circumstances of each case. *Cummins* v. *Ag'l Ins. Co.*, 67 N. Y. 260; *Whitney* v. *Black River Ins. Co.*, 72 N. Y. 118; *Herrman* v. *Merchants' Ins. Co.*, 81 N. Y. 184; *Phœnix Ins. Co.* v. *Tucker*, 92 Ill. 64; *American Ins. Co.* v. *Foster*, 92 Ill. 334; *Stupetski* v. *Transatlantic Fire Ins. Co.*, 43 Mich. 373.

On this question the evidence was that the machinery was not in operation from the date of the policies until the fire. Just

before it was burned arrangements were being made to put it in operation. The machinery and other property insured was in its proper place from the issue of the policies to the time of the fire. On this evidence we cannot say, as matter of law, that the jury could not have found that the premises were not vacant and unoccupied, within the meaning of those words as used in the conditions contained in the contracts in suit.

It might be argued on another ground, that there was no breach of the conditions contained in the policy issued by defendant "A." The condition there is, that if the premises shall become vacant or unoccupied, the policy shall be void. It might be said that this condition relates to something to occur in the future; that the language used admits of no other construction; that it means some change in the situation of the property, to come into existence in the future; that the policy must be understood as covering the property in the condition it was in when insured, and the condition must be treated as a stipulation by the insured that its then present condition should not be changed. If this is the correct construction, on which we express no opinion, there is no evidence of a breach of the conditions of that policy, and the plaintiff is entitled to recover.

The defendants object, that the property belonging to Fifield, and the policies being issued in his name, the action cannot be maintained in the plaintiff's name. If this were a valid objection, it might be avoided by an amendment (*Stebbins* v. *Ins. Co.*, 59 N. H. 143, *Folsom* v. *Ins. Co.*, 59 N. H. 54, *The State* v. *Hollis*, 59 N. H. 390, *Boudreau* v. *Eastman*, 59 N. H. 467); but the case shows that the plaintiff's claim, under his mortgage, exceeds the amount of both policies. Fifield, consequently, has no interest in them except in so far as they go to extinguish his debt. This being the case, no amendment is necessary.

*Case discharged.*

All concurred in the result, on the ground that the evidence on the question of waiver was competent for the jury.