MYERS, SCHREINER & CO. v. THE COUNCIL BLUFFS INS. CO.

1. **Fire Insurance:** PROOFS OF LOSS: VERIFICATION ON BEHALF OF FIRM. A provision in a policy of insurance that proofs of loss must be signed and sworn to by the assured, is sufficiently complied with, where the assured is a co-partnership, when they are signed and sworn to by one of the partners, unless objection is made at the time.

2. ———: ———: OBJECTION TOO GENERAL. An objection made by the company to proofs of loss, that they are "deficient both in form and substance," without pointing out the specific defects relied on, is too general to require the assured to furnish other proofs.

3. ———: FALSE STATEMENT OF VALUE IN APPLICATION: EVIDENCE. The application for insurance in question was, as to the value of the insured goods, as follows: "Cash values:    *    *    *    . Annually, stock or mdse., $4,000.    *    *    *    . How often do you take account of stock? Annually. When last taken? Just commenced. What was the amount? Stock will be from $4,000 to $5,000.    *    *    *    ." *Held* that there was here no statement of the value of the goods at the time the application was made, and that, to rebut a charge of fraudulent representation as to their value, it was competent for the assured to introduce evidence to show that the agent who took the risk and filled the blanks in the application was informed that the value of the stock was *then* only about $1,700, but that it was the intention to increase it to $4,000 or $5,000.

*Appeal from Adair Circuit Court.*

SATURDAY, JUNE 25.

ACTION on a policy of insurance on a stock of merchandise

against loss or damage by fire. Trial before a jury. Judgment for the plaintiff, and defendant appeals.

*Chas. S. Fogg* and *Sapp & Pusey*, for appellant.

*Kauffman & Guernsey*, for appellee.

SEEVERS, J.— I. The defendant pleaded that the plaintiff had failed to furnish it with proofs of loss, as is required by the terms and conditions of the policy. The loss occurred on the 8th day of April, 1884, and immediately thereafter the plaintiff gave the defendant notice of the loss, and on the 28th day of said month furnished it with the required proofs of loss, as the plaintiff claims. The policy provides that, "as soon after the fire as possible, a particular statement of the loss shall be rendered the company, signed and sworn to by the assured." The objections to the proofs furnished are that they were neither signed nor sworn to by the assured. It will be observed that the assured is a partnership, and it is obvious that the proofs could not be sworn to by it, and such we do not think is the meaning of the provision of the policy. The proofs furnished were signed and sworn to by one of the members of the partnership, and we think this a sufficient compliance with the conditions of the policy, in the absence of a specific objection that it was not so regarded by the defendant.

*1. FIRE insurance: proofs of loss: verification on behalf of firm.*

The policy provides that the assured, when required, shall submit to an examination under oath, and the same shall be reduced to writing. On May 6, 1884, the defendant notified the assured that the proofs of loss received " is deficient both in form and substance. And we hold it subject to your orders; and we would here say that nothing falling short of a full compliance with section G, and more particularly part three of such section will be recognized as proof under the policy in question." And the assured were required to submit to an examination

*2. —: —: objection too general.*

under oath. Such examination was had, and we are not adviced that the same was not full and complete, but possibly not satisfactory. Part three of section G of the policy refers to such examination; and, as the assured submitted thereto, we are unable to see why this was not a compliance with the conditions of the policy, in the absence of any showing that the same, in any respect, failed to comply with the policy. The only other objection made to the proof was that it was deficient both in form and substance. This is too general. The specific objection now relied on should have been then stated. Common fairness requires this much. Wood, Ins., § 452.

II. The defendant pleaded that the "assured willfully, knowingly and fraudulently overvalued the property insured, and claimed that, by reason of said overvaluation in the application, there was such a breach of the warranty, as to value, both in the application and in the policy, as rendered the policy null and void. The plaintiff replied that the defendant was estopped from making such defense because, at the time the application was made and signed, the agent of the defendant was correctly informed' as to the value of the merchandise on hand, and that the same would be increased by subsequent purchases. The insurance was for $2,500, and the defendant insists that the value of the stock was fixed at $4,000, when it was in fact about $1,700 at the time the insurance was effected. The plaintiff concedes that the value of the stock was about $1,700, but denies that it was ever represented or warranted that the stock was of any greater value when the application for insurance was made. In an amended abstract, which is not denied, it is stated that the application in the respect mentioned is as follows; "Cash values: Building, (exclusive of ground,) $————. Annually, stock or mdse, $4,000. Other personal property, $————. Yes. How often do you take account of stock? Annually. When last taken? Just commenced. What was the amount? Stock will be

<div style="margin-left:2em; font-size:smaller">3. ————: false statement of value in application: evidence.</div>

from $4,000 to $5,000.    Do you keep merchandise and cash accounts?    ———."

By consent of parties, the original application is before us, and from a careful exaimination of it we are unable to conclude that the statement in the amended abstract is not correct.   It, therefore, in the absence of a denial, must be so regarded.   The assured introduced evidence tending to show that the agent soliciting the insurance, and who filled the blanks in the application, was informed that the stock of goods at that time was of the value of about $1,700, but it was expected to increase the value of the stock to the value named in the application.   It is urged that this evidence is inadmissible; but we think otherwise.   It cannot fairly be said, we think, that such evidence contradicts either the application or the policy.

The statements made in the application may be said to be contradictory, but we think it cannot be said that there is a positive statement as to the value of the goods.   It is clear that the statement is that the value of the goods will be from $4,000 to $5,000.   This excludes the thought that the then present value amounted to that, and we do not think that any one who read the application could reasonably reach the conclusion that there was any representation or warranty as to the value of the goods.   Therefore, as there was no warranty as to such value, evidence to show what was said to the soliciting agent of the defendant was admissible for the purpose of showing that there was no fraudulent representation. This it seems to us, must be obvious, for the reason that the application on its face stated that the value of the stock would be from $4,000 to $5,000; and, if the present value was deemed by the defendant to be material, it was, by the terms of the application, put upon, and was bound to make, inquiry.   Under the circumstances, we think the evidence in question clearly admissible, and within the rule in *Jordan v. State Insurance Co.*, 64 Iowa, 216, and *Donnelly v. Cedar Rapids Ins. Co.*, 70 Id., 693.                 AFFIRMED.