CATHARINE A. D. HUBER, Respondent, *v.* THE MANCHESTER FIRE
ASSURANCE COMPANY, Appellant.

92h 223
f 64ad372

*Fire insurance — when a dwelling house is "occupied"— when it is not "vacant"—
effect of a condition that the "entire policy" shall be void.*

The term "occupation," as used in policies of fire insurance, means that human
beings are present in a dwelling house as at their customary place of abode,
not absolutely and continuously, but the house must be the place of usual
return and habitual stoppage.

The cases relating to what constitutes an occupation of a dwelling house exam-
ined and considered.

In an action brought upon a policy of fire insurance against loss to household
furniture, it appeared that the policy contained the following provision: "This
entire policy * * * shall be void if a building herein described, whether
intended for occupancy by owner or tenant, be or become vacant or unoccu-
pied, and so remain for ten days." Upon this point the evidence was that the
plaintiff, who was and for a long time had been a tenant of the house, in which
she had been living alone, on August 24, 1892, left the house intending to be
absent five or six weeks, at the end of which time she expected to return to the
house. The fire occurred in the night of September 17, or the morning
of September 18, 1892.

It appeared that the agent of the owner had agreed, during the absence of the
tenant, to paper and paint every room, except one in which the tenant had
stored substantially all the furniture in the house. She kept the key of this
room, nailed up two of the doors of the house, locked up the other two and
gave the key of the front door to a friend of hers, with instructions to go there
every day to see that the doors were locked and blinds closed after the painters
left. The friend, however, did not go every day. It also appeared that all
the painting and paper hanging was finished upon September seventh, and
that, after that date, nobody was in the house at any time before the fire.

*Held*, that while the house was not "vacant," within the meaning of the policy,
yet it was "unoccupied," and that the plaintiff could not recover;

That, as the policy provided that, if this condition of vacancy or non-occupancy
occurred, the "entire policy" should be void, the plaintiff could not recover
under it for the loss of personal property contained in the building.

APPEAL by the defendant, The Manchester Fire Assurance Com-
pany, from a judgment of the Supreme Court in favor of the
plaintiff, entered in the office of the clerk of the county of
Onondaga on the 16th day of November, 1894, upon the verdict
of a jury rendered after a trial at the Onondaga Circuit, and also
from an order entered in said clerk's office on the 23d day of

November, 1894, denying the defendant's motion for a new trial made upon the minutes.

*W. S. Jenney*, for the appellant.

*Hoyt & Farrington*, for the respondent.

MERWIN, J.:

This action is on a policy of insurance issued by the defendant on the 6th of June, 1892, insuring the plaintiff for one year; to an amount not exceeding $1,500, against loss or damage by fire to household furniture therein described, " all contained, and while contained, in the two-story shingle roof frame building and its additions, adjoining and communicating, occupied, and to be occupied, as a dwelling house and situate No. 445 on the East side of South Salina St., in Syracuse, New York." A fire occurred late in the evening of September 17, or early in the morning of September 18, 1892, by which the property was destroyed or injured to the amount, as the jury have found, named in the policy.

In the policy there was the following provision: " This entire policy, unless otherwise provided by agreement, indorsed hereon or added hereto, shall be void * * * if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days." The defendant, as one of its defenses, claimed that the dwelling house in which the property was, was for more than ten days prior to the fire vacant or unoccupied. The trial court left it to the jury to say whether or not, within the meaning of the policy, the house became or was vacant or unoccupied, and they found in effect that it was not. The defendant claims that upon the undisputed evidence it should have been held by the court that the clause in question was violated, and that the exception of the defendant to a refusal to so rule should be sustained.

The plaintiff rented the house of one Mrs. Dissell and she had lived there for about ten years. She rented it from month to month at thirty dollars a month. The house was fully furnished, and for some time before she left she had been living there alone. On the 24th of August, 1892, she went to Perth Centre, New Brunswick, to visit her mother, and she did not return until after the fire. It was her

intention when she went away to stay five or six weeks. Before she left, as she testifies, she put all the furniture in the house up stairs in one large side room, and every room in the house was perfectly bare except that room, except that the sitting-room stove was left in the sitting room down stairs, and there was an ice box, a jar and a can that were not taken to the up-stairs room. There was an arrangement between the plaintiff and the agent of the owner by which the agent agreed during her absence to paper and paint every room excepting the one the furniture was in. This room was piled full of furniture clear to the ceiling so that, as plaintiff says, " you could not walk a step in there." This room the plaintiff locked up and took the key away with her, and left no key with any one else. There were four doors into the house besides the front door. The plaintiff had two of the four doors nailed up. One of the others was locked and the key placed in the room where the furniture was, and the key of the other was given to the paper hanger so as to permit him to go in and do his work. The key of the front door the plaintiff gave to a Miss Bates, a friend of hers. Miss Bates, called as a witness by plaintiff, testifies as to instructions from plaintiff, " she wanted I should go there every day, afternoon or evening, to see things were — how the doors were locked and blinds were closed, after the painters left." This witness, in pursuance of these instructions, went often into the house, but did not go every day. As to the situation after plaintiff left, it was at the trial " agreed that the painting was done on the 26th, 27th and 29th days of August; and the paper hanging work at various times, twenty-four hours in all, and the work finished on the 7th of September, but the work might have been done any time prior to the 7th for twenty-four hours. The last time anybody was in the house was before the 7th day of September. No mechanic was in the house, after that date, and before the fire."

The plaintiff, as she testifies, did not intend to give up the house, and the jury had a right to find that the plaintiff when she left intended to return and live at the house as she had before done.

The foregoing are substantially the facts, as shown by the plaintiff or as agreed on at the trial.

It is quite clear that the house in this case was not vacant.

The more serious question is whether or not it was unoccupied within the meaning of the policy. The description of the subject of the insurance is coupled with the clause " all contained and while contained " in a certain building " occupied and to be occupied as a dwelling house." The kind of occupancy, therefore, within the contemplation of the parties was as a dwelling house.

In *Herrman* v. *Adriatic Fire Ins. Co.* (85 N.Y. 162) the plaintiff in June obtained from defendant a policy upon a dwelling house used by him for a summer residence, and upon furniture therein. The policy contained a clause declaring it void in case " the above-mentioned premises shall   *   *   *   become vacant or unoccupied, and so remain for more than thirty days, without notice to and consent of this company in writing." The plaintiff was then living in the house, but he left with his family in November following, and returned to his city residence to remain for the winter, leaving, however, in the house insured all his furniture and the summer clothing of himself and family. He also left the house in charge of his farmer, who occupied the farm house, and members of whose family visited and aired the dwelling once a week, and the plaintiff and his wife also visited it once a fortnight. It was held that the dwelling house was not occupied within the meaning of the policy. At page 169 it is said : " We have already said enough to show our opinion that for a dwelling house to be in a state of occupation, there must be in it the presence of human beings as at their customary place of abode, not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage. We think that a verdict of a jury would not have been allowed to stand that found that this dwelling house was occupied at the time of the fire within the terms of the policy."

In *Johnson* v. *N. Y. Bowery Fire Ins. Co.* (39 Hun, 410) the provision of the policy was that it should be void, unless proper consent was obtained, " if the building herein described be or become vacant or unoccupied for the purposes indicated in this contract." The insurance was upon furniture. The plaintiff and her family, a week or ten days before the fire, left on a visit, leaving no one in the house. During this time the husband of plaintiff came back and stayed in the house over night on two occasions, and he and another man stayed there the night of the fire, and the plaintiff

expected to return the next day. It was held that a verdict for plaintiff should not be disturbed.

In *Wait* v. *Agricultural Ins. Co.* (13 Hun, 371) the condition in the policy was that if the dwelling house should cease to be occupied by the owner or occupant in the usual and ordinary manner in which dwelling houses are occupied as such, then the policy should be void until written consent was obtained. The dwelling was occupied by a tenant who commenced to move out on the fifteenth of March, taking most of his furniture and all his family. No one was left in the house, and on the night of the sixteenth it was destroyed by fire. There was some proof that the plaintiff had no notice of the removal of the tenant. It was held that the question whether or not the house was unoccupied at the time of the fire, within the meaning of the policy, was properly left to the jury.

In *Gibbs* v. *Continental Ins. Co.* (13 Hun, 612) the question was whether the premises "became unoccupied." The plaintiff slept in her daughter's house adjoining the premises insured, but her furniture and clothing were in her own house, and she spent the day there. It was held that the house was not unoccupied. In *Kelly* v. *Home Ins. Co.* (2 N. Y. Wkly. Dig. 479) there was no time named in the condition during which the building might remain unoccupied, and the question was held to be whether there was an abandonment of the premises as tenantable property, or a vacancy for an unreasonable time. In *Woodruff* v. *Imperial Ins. Co.* (83 N. Y. 133) the form of the condition was " vacant and unoccupied," and it clearly appeared that the building was not vacant. In *Vanderhoef* v. *Agricultural Ins. Co.* (46 Hun, 328) the form of the condition was the same as in the *Wait Case* (*supra*), and it was held that the question of occupancy was for the jury. In *Stupetski* v. *Transatlantic Fire Ins. Co.* (43 Mich. 373) it was held that a clause avoiding a policy in case the premises should " become vacant or unoccupied," did not apply where a man and his family left home for twelve days to visit a sick daughter, and engaged a person to go to the house daily to look after the house and feed the stock. In *Franklin Fire Ins. Co.* v. *Kepler* (95 Penn. St. 492) the only question that seems to have been decided was that the premises were not " vacated " by a temporary absence of four days. A similar question was considered in *Springfield F. & M.*

*Ins. Co.* v. *McLimans* (28 Neb. 846). In *Phœnix Ins. Co.* v. *Tucker* (92 Ill. 64) the terms of the condition were, " be vacant or unoccupied or not in use," no time being fixed. The non-occupancy, if any, occurred while a transfer of possession was being made to a tenant. It was held to be a question for the jury, the court saying that what was meant by the terms vacant or unoccupied, as used in the policy, was a question of law, but whether the house was, at the time of the loss, vacant and unoccupied, was a question of fact for the jury. A similar view was taken in *Rockford Ins. Co.* v. *Storig* (137 Ill. 646).

The cases we have thus referred to are cited on the part of the plaintiff as supporting her view of the case. They do not seem to be decisive in that direction.

A dwelling house is unoccupied when no one lives therein. (*Herrman* v. *Merchants' Ins. Co.*, 81 N. Y. 184, 188.) In *Paine* v. *Agricultural Co.* (5 T. & C. 620) it is said that "occupation of a dwelling house is living in it, not mere supervision over it." In that case the condition was that in case the house shall be "left unoccupied" without giving immediate notice to the company the policy should cease The owner and occupant was absent for six weeks for medical treatment, visiting the house, however, upon different occasions, and maintaining a general oversight over the property therein contained. No notice was given to the defendant. It was held that a finding in favor of the plaintiff could not be sustained.

In *Barry* v. *Prescott Ins. Co.* (35 Hun, 601) the tenant of the plaintiff, who occupied the house at the time of the insurance, left it and gave the key to the plaintiff, who thereupon commenced to plaster and whitewash it, and to move her furniture into it with a view of occupying it, and all her furniture had been moved in three days before the fire, but no person was living in it when it took fire. It was held that the house was unoccupied within the meaning of the provision that if the premises became vacant or unoccupied, and so remained with the knowledge of the assured, without notice to and consent of the company in writing, the policy should be void. And it was said that under the *Herrman Case* (85 N. Y. 162) a dwelling house is to be deemed unoccupied when for the time being it is not the place of abode of human beings and used as such. A similar view was taken in *Martin* v. *Rochester German Ins. Co.* (86 Hun,

35). In 1 May on Insurance (3d ed., § 249c) it is said : " The mere presence of goods in the house and a supervision over it is not an ' occupancy.' That requires a living in it."

In the present case, when the plaintiff placed practically all her furniture in the one room up stairs, filling it full and locked the room, taking the key away with her, and then left the premises and went to New Brunswick, the house ceased for the time being to be the place of her abode, and no one else was living in it. There was in it no inhabitant The fact that her agent had a key and had the supervision of the property was not an occupation as a dwelling house. That was decided in the *Herrman* case. After the plaintiff left the house was not inhabitable in the ordinary way unless other furniture was moved in, as the plaintiff's furniture was locked up. The intention of plaintiff to return in four or five weeks did not make an occupation during her absence according to the doctrine of the *Herrman* case. There the plaintiff intended to return in the spring. Assume that as between plaintiff and the owner her tenancy continued and she would be deemed to be in possession, that would not answer the requirement. The plaintiff in the *Herrman* case had beyond doubt the legal possession and occupancy. And so it was in the *Barry* case.

In this case, as in the *Herrman* case, there was a time fixed within which non-occupancy might exist. The question, therefore, does not arise, as in some of the cases, whether the property was unoccupied for an unreasonable time. The parties contemplated that there might be a non-occupancy for a certain time, thereby presumptively covering the exigencies that might be likely to arise by reason of sickness or sudden or temporary emergencies and sufficient opportunity was given to enable the parties to protect themselves. It was assumed there might be a temporary absence, but a limit was placed. The plaintiff left on the twenty-fourth of August, and from that time to the time of the fire on the seventeenth or eighteenth of September no one was living in the house.

The principle of the *Herrman Case* (85 N. Y. 162) seems to us to be directly applicable to this case, and following that case we see no escape from the conclusion that upon the undisputed facts it should have been held that the dwelling house became and was unoccupied and so remained for more than ten days.

But the plaintiff further contends that if the house was unoccupied it should not affect the insurance upon the personal property. The provision was that the "entire policy" should be void in the contingency named. The insurance in terms was on certain property contained in the building, and "while contained" in it "occupied and to be occupied as a dwelling house." Clearly the provision as to non-occupancy must be construed to refer to the particular building that was specified as containing the property and where it was to remain and which was then occupied and was to continue to be occupied as a dwelling house, and necessarily was designed to affect the risk on the personal property insured. The case of *Halpin* v. *Ins. Co. of N. A.* (120 N. Y. 73) does not help the plaintiff, while the case of *Halpin* v. *Ætna F. Ins. Co.* (120 N. Y. 70) tends to support the view of the defendant. The foregoing considerations lead to a reversal.

HARDIN, P. J., concurred; MARTIN, J., not voting.

Judgment and order reversed and a new trial ordered, costs to abide the event.