Argued March 19; decided October 19, 1896.

## SCHMURR v. STATE INSURANCE CO.
### (46 Pac. 363.)

1. FIRE INSURANCE—PROOF OF LOSS.—An insurance company must act fairly toward its policy-holders, and when an honest attempt has been made to present proofs of loss, the company must, with reasonable promptness, state definitely its objections to the proofs or it will be estopped from urging them; thus a return of proofs of loss with the mere statement that they were "declined and objected to" is practically an acceptance, for the objection is too indefinite to be obviated.

2. IDEM.—On the same principle, an objection that the certificate is not made by the proper officer is waived unless made when the proofs are presented.

3. PAROL WAIVER OF CONDITIONS OF POLICY.—Where a company, after full knowledge of facts that render void one of its policies, retains the premium and fails to cancel the policy, it waives the forfeiture, and this can be done by conduct or by parol, although the policy itself provides that it shall be in writing.

From Multnomah:  E. D. SHATTUCK, Judge.

Action by John Schmurr against the State Insurance Co., of Salem, Oregon, to recover on a policy of fire insurance. After a jury trial plaintiff had judgment as prayed, from which defendant appeals.

AFFIRMED.

For appellant there was a brief over the name of *R. & E. B. Williams,* with an oral argument by *Messrs. W. T. Slater* and *Emmet B. Williams.*

For respondent there was a brief over the name of *McGinn, Sears & Simon,* with an oral argument by *Mr. Nathan D. Simon.*

Opinion by MR. JUSTICE BEAN.

This is an action upon a fire insurance policy which provides that as a part of the proof of loss the assured "shall produce a certificate under the hand and seal of a magistrate or notary public (nearest to the place of the fire, not concerned in the loss as a creditor or otherwise, nor related to the assured), stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has, without fraud, sustained loss on the property insured to the amount which such magistrate or notary public shall certify"; and, if the claim be for a building, "the duly verified certificate of some reliable and responsible builder as to the actual cash value of it immediately before said fire"; and also that "any notice given to, representation made to, or by, or knowledge of, any solicitor or agent representing this company, of any fact, change, act, or thing relating to the property, title, occupancy, incumbrances, or otherwise, insured under this policy subsequent to the issuing of the same, shall not in anywise be binding on, or be regarded as notice to, or knowledge of, this company; but, in order to be binding on the company, must be endorsed in writing hereon, as provided in the terms and conditions of this policy"; and, "that in case of  *  *  *  the erection of adjoining buildings  *  *  *  without being immediately notified to this company and its consent thereto obtained in writing

* * * this policy shall thereafter cease and be null and void."

The action is defended upon the grounds (1) that no proof of loss was made as provided in the policy; and (2) that the contract of insurance became null and void by the erection of an adjoining building within the prohibited limits without the written consent of defendant. The plaintiff claims, however, that he furnished sufficient proof of loss, and that the stipulation of the policy in reference to the effect of the erection of adjoining buildings was waived by the company. The insurance was effected through Irle, a soliciting agent of defendant, with authority to receive and forward applications to the home office, countersign and deliver policies when issued by that office, and to collect the premiums thereon. After the delivery of the policy, but before all the premium had been paid, an electric car barn was built within eight or nine feet of the building insured, and when plaintiff came to make the deferred payment he notified Irle of that fact, and inquired as to the amount of additional premium required on account thereof. With this knowledge of the increase in the risk, Irle accepted the balance due on the premium, and wrote to the company to ascertain the additional amount required on account of the erection of the car barn, and upon receipt of its answer notified plaintiff of the amount, but it was never paid nor the policy cancelled. Within a short time after the fire, the plaintiff, through his attorney, made out and forwarded to the home office of the company proof of loss, regular in all respects, except that it had neither a certificate of the magistrate or notary public nearest the fire, nor a builder's certificate as required by the policy. Upon its receipt by the company it was promptly returned with the objection that "it does not show whether the conditions of the policy have been violated or not, furnishes no proof as to

the value of the house except the man's mere statement that it is worth so much, and in fact does not comply with the terms and conditions of the policy." Thereupon one of the attorneys of the plaintiff immediately affixed his certificate as a notary public in the form and to the effect required by the policy, and again forwarded it to the company, with a letter calling attention to the certificate, and saying: "We do not know in what other respect the proof of loss is defective, as it follows strictly the proofs of loss which are used by your company. If in any other respect it is defective will you kindly inform us?" A few days afterward the defendant returned the proof saying that it "is returned herewith, declined and objected to." Upon this record the two questions presented are (1) does the proof of loss furnished by the plaintiff sustain the allegation of the complaint that proof of loss had been regularly made; and (2) did the company waive the provision of the policy in reference to the effect of the erection of adjoining buildings? Both these questions must be answered in the affirmative.

1. The law is settled that where the assured, in attempting in good faith to comply with the provisions of a policy, furnishes to the insuring company, within the time stipulated, what purports and is intended to be proof of loss, the company must point out particularly any defects therein if it intends to rely upon them. If it fails to do so, objection cannot thereafter be made to its sufficiency: May on Ins., §§ 468, 469; Wood on Fire Ins., § 452; *Phoenix Ins. Co.* v. *Tucker,* 92 Ill. 64 (34 Am. Rep. 106); *Insurance Co.* v. *Block,* 109 Pa. St. 535 (1 Atl. 523); *Myers* v. *Council Bluffs Ins. Co.,* 72 Iowa, 176 (33 N. W. 453); *Mercantile Ins. Co.* v. *Holthaus,* 43 Mich. 423 (5 N. W. 642); *Northern Assur. Co.* v. *Samuels,* 33 S. W. 239 (Tex. Civ. App.). Now, in this case the defendant failed to point out any particular objection to the proof as fur-

nished, except that the value of the building was shown only by the statement of the assured. The objections that the proof did not show whether the conditions of the policy had been violated or not, and that it did not comply with the terms and conditions of the policy, are altogether too general: *Insurance Co.* v. *Block,* 109 Pa. St. 535 (1 Atl. 523); *Myers* v. *Council Bluffs Ins. Co.,* 72 Iowa, 176 (33 N. W. 453). It is the duty of an insurance company, pending the adjustment of a loss, under its policy, to act toward the claimant in good faith, and if it is dissatisfied in any way with the proof furnished, it ought to make known to the assured the specific nature of its objections, so that he may have an opportunity to make the necessary correction before it is too late. Good faith and common honesty demand as much, and the law is not satisfied with anything less. Hence we dismiss without further comment any objections to the sufficiency of the proof as made, other than that it "furnishes no proof as to the value of the house except the man's mere statement that it is worth so much." This objection is quite indefinite in its meaning, as the policy provides that the value shall be shown both by the certificate of a magistrate or notary public and of a builder, and whether it was intended to be understood that the proof was defective because it did not have the notary's or the builder's certificate is not made clear. The plaintiff, however, evidently in good faith, understood it to refer to the certificate of the notary, and immediately supplied what he supposed to be the defect pointed out and so advised the company. It thereafter made no objection on that account, but returned the proof with the simple statement that it was "declined and objected to." Under these circumstances it cannot be heard to say now that the proof is defective because it did not have a builder's certificate as to the value of the property. If it desired to object on that account

it should have said so, and not used language calculated to mislead and confuse.

2.   But it is said that the notary's certificate as actually furnished is insufficient because the facts show that the officer making it was not the notary nearest to the fire.   But this objection also comes too late.   It should have been made at the time the proof was returned, and plaintiff thus given an opportunity to procure the certificate of the proper officer, if that was insisted upon by the defendant company.   In our opinion, the objection to the proof of loss that the certificate of the nearest notary and of a builder did not accompany it is not available to the defendant at this time, and the proof as made must be held and deemed a sufficient compliance with the policy in that respect.   This being so, any error of the court either in the admission of evidence or in instructing the jury upon the matter of the waiver of a proof of loss becomes entirely immaterial, and need not be further considered.

3.   Upon the other question it is admitted that unless the stipulation in the policy in regard to the effect of the erection of adjoining buildings was waived by the defendant, the construction of the car barn rendered the policy void, and the plaintiff cannot recover.   The question of waiver must be determined from the testimony of the plaintiff and the agent Irle.   The plaintiff testified that when he paid the last installment of the premium he told Irle the car barn had been built, and asked him how much it would add to the cost of his insurance; that Irle said seventeen dollars, but afterwards said it would be about twenty-two dollars, and at another time thirty-five dollars; that he told Irle he wanted to find out about it, but didn't have the money to pay just at that time, and Irle replied "All right, I will let you know," but the witness never heard of the matter again.   Irle says that he

saw the plaintiff in September, and had a conversation with him about the car barn, during which the plaintiff asked him if it would make any difference in his insurance; that he told him it would increase the cost of the insurance as well as the hazard, but he could not tell how much, but would write to the company and find out; that he did write to the company for information in regard to the matter, and upon receiving its answer wrote to the plaintiff to come to his office and he would tell him what the additional cost would be.   In response to this notice plaintiff came to the office, and was informed by witness of the amount of the increased rate on account of the barn, but thought it too much, and for that reason did not pay it at the time, but said he would see about it.   In a week or so afterwards the witness again met the plaintiff on the street, and told him he had not paid the additional premium, and that it must be paid or he had no insurance, and plaintiff said that other agents had told him that a policy when once written remained in force until it expired, and that he would let it go that way.   Upon cross examination the witness said that he did not cancel the policy for failure to pay the additional premium as he ought to have done, because he wanted to keep the insurance, and wanted plaintiff to pay the amount due.   From this testimony it appears that Irle not only had notice himself of the existence of the car barn before he received and accepted the full premium on the policy in suit, but that he also notified the company at the home office of that fact, and obtained from it a statement of the amount of additional premium made necessary by such structure.   When the company, with knowledge of the violation of the provisions of the policy as thus communicated by Irle, retained the premium, and allowed the policy to remain uncanceled, it estopped itself from claiming a forfeiture on account of the barn, although its consent for its erection was not

given in writing. The condition of the policy in this regard could be waived or modified by the defendant, and such waiver or modification could be made by parol, although the policy itself provided that it should be in writing: *Miner* v. *Phoenix Ins. Co.*, 27 Wis. 693 (9 Am. Rep. 479);. *Webster* v. *Phoenix Ins. Co.*, 36 Wis. 67 (17 Am. Rep. 479); *Viele* v. *Germania Ins. Co.*, 26 Iowa, 9 (96 Am. Dec. 83). So that whether Irle's knowledge of the erection of the car barn would be binding upon the defendant or not is immaterial, because the company itself, after being advised of the breach, retained the premium, and took no steps whatever toward the cancellation of the policy, and therefore waived the forfeiture: *Hibernia Ins. Co.* v. *Malevinsky*, 6 Tex. Civ. App. 81 (24 S. W. 804); *Phoenix Ins. Co.* v. *Spiers*, 87 Ky. 285 (8 S. W. 453). Finding no error in the record, the judgment of the court below is affirmed.                                        AFFIRMED.