## MARY BENTZ *vs.* NORTHWESTERN AID ASSOCIATION.

### March 6, 1889.

**Mutual Benefit Society—Refusal to Pay Loss—Remedy.**—When a mutual-benefit life-insurance association, incorporated under the laws of this state, and dependent upon securing such amounts as may be required to meet and liquidate death claims through assessments upon its members, refuses to make an assessment in a proper case, the remedy is by an action for a breach of contract.

**Same—Inability to Collect Assessments.**—Unless the defendant association alleges in its answer and on trial establishes that the amount should be less, because all members do not respond to assessments, the measure of damages in such cases is the amount assessable upon all insured.

**Same—Proofs of Death—Statement of Cause not Conclusive on Beneficiary.**—In an action to recover the amount claimed to be due upon a policy or certificate issued by such an association, it answered, by way of defence, that the assured had used alcoholic liquors to such an extent, subsequent to the issuance of the certificate, as to induce *delirium tremens,* and that such disease was the cause of death. On the trial it offered little or no evidence to sustain the allegations, but relied upon two affidavits made by physicians as to the cause of the death, in one of which the cause was stated as *delirium tremens,* in the other as hemorrhage induced by an excessive use of intoxicants. These affidavits were made by the physicians on blanks furnished by the association, and were forwarded to it by plaintiff, with other proofs of the death of the assured. *Held,* that the plaintiff beneficiary was neither concluded nor estopped upon the trial by the statements of the physicians, and that the issue made by the pleadings as to the real cause of the death was triable as any other issue of fact.

Plaintiff, the widow of William Bentz, brought this action in the district court for Hennepin county, on a certificate issued to him by defendant for her benefit. At the trial before *Rea,* J., and a jury, plaintiff had a verdict. The defendant appeals from an order refusing a new trial.

*Keith, Evans, Thompson & Fairchild,* for appellant.

*C. A. Ebert,* for respondent.

COLLINS, J. October 2, 1886, one William Bentz became a member of the defendant association, and so continued until his death,

June 21, 1887. The plaintiff, his widow, is named as the beneficiary in the certificate or policy of insurance issued to the deceased when he joined the association.

1. If plaintiff has chosen the proper remedy, an issue of fact is presented by the pleadings in an action for the recovery of money only, and the defendant is in error when insisting that, upon its failure or refusal to levy an assessment with the proceeds of which it could meet and liquidate plaintiff's claim, she could only resort to equity, and compel an assessment. This position is based upon the provision in the certificate that "upon receipt at the principal office of this association of satisfactory proofs, on blanks furnished from said office, of the death * * * of said William Bentz, this association will pay to Mary Bentz, or to the legal heirs of said William Bentz, seventy-five per cent. of the net proceeds of one full assessment at schedule rates upon all the certificate-holders in good standing in this association at the date of said death, * * * not, however, to exceed $2,000, to be paid within ten (10) days after the closing of the assessment for the same."

In holding that appellant's contention is not well grounded, and must be rejected, and that an action at law may be maintained in case of the refusal of an association to make an assessment for reasons of the character alleged in the answer herein, we are conscious of the diversity of opinion upon the question, and that a number of very respectable courts have held to the contrary; their decisions being that, when the officers of an association of this nature refuse to make an assessment to meet a death claim, appropriate proceedings must first be taken to compel a performance of this duty, and that a judgment for money without regard to an assessment, or to the amount which might be collected on an assessment, cannot be sustained. But, upon the other hand, the authorities are numerous and of high character that such an association is liable to suit for a breach of contract when it refuses to make the required assessment; the measure of damages being the amount assessable upon all insured, unless the defendant alleges in its answer, and by proof establishes the fact, that it should be less. *Freeman* v. *Nat. Benefit Society,* 42 Hun, 252; *Lueders* v. *Hartford Life Ins. Co.,* 4 McCrary, 149; *Elkhart Mut. Aid*

*Ass'n* v. *Houghton,* 103 Ind. 286, (2 N. E. Rep. 763;) *Taylor* v. *Nat. Temperance Union,* 94 Mo. 35, (6 S. W. Rep. 71;) *Burland* v. *Mut. Benefit Ass'n,* 47 Mich. 424, (11 N. W. Rep. 269.) And we think this view very clearly foreshadowed in *Kerr* v. *Minn. Mut. Benefit Ass'n,* 39 Minn. 174, (39 N. W. Rep. 312.)

In this state these associations are incorporated. We see no reason why a corporation of this character should be exempt from the common-law liability which rests upon other kinds of corporations and on natural persons, for a breach of contract, when it refuses to assess its members to meet a proper claim. In many of the adjudicated cases in which it has been held that the remedy for such refusal is in equity, the insuperable objection to an action at law seems to have been in the difficulty of establishing a proper measure of damages when the contract is not absolute to pay a certain sum, but only the amount realized by an assessment of the living members, none of whom may answer to the call. There is force in the objection, but to give it much weight it must first be assumed that some members will not respond to assessments as they have customarily done, and will ignore the demand made in particular instances. Such delinquents should not be presumed, and if they really exist,—if any number of members are habitually in default,—the percentage can easily be shown by the defendant association upon the trial. The adoption of this rule will do no injustice, and the amounts recovered in this class of actions come quite as near just compensation, approach as closely to what a beneficiary should recover and an association pay, as the sums ordinarily recovered as damages for failures to observe the terms of contracts.

2. To defeat plaintiff's claim, the defendant set up in its answer that, when making application for a certificate of membership, the deceased falsely answered certain questions propounded to him as to the state of his health, and as to his habit regarding the use of intoxicants, which were material, and which, had they been truthfully answered, would have prevented his becoming a member of the association; and that subsequent to the issuance of his certificate he used alcoholic liquors to such an extent as to induce *delirium tremens,* from which disease it is averred he died. Issue was taken upon this

defensive matter found in the answer, and it might reasonably be expected that defendant would be prepared with testimony to sustain the charges, if available. But it offered very little testimony relating to such a defence, resting and relying upon statements as to the cause of death found in the proofs made out by attending physicians, duly verified by their oaths, and forwarded by the plaintiff soon after her husband's decease. These proofs were made out upon blanks furnished by defendant in accordance with a clause found in the certificate, which provides for an assessment to meet a claim, on being furnished "satisfactory proofs, on blanks furnished from the principal office of the association, of the death" of the assured. In one of these the cause of death was stated as *delirium tremens;* in another that when the affiant was called professionally, the deceased "was on the verge of *delirium tremens;*" while from the third it appeared that death was attributable to hemorrhage from the lungs. These affidavits of the physicians were put in evidence by the plaintiff to substantiate an allegation of the complaint, denied in the answer, that satisfactory proofs of death had been made to the association. Defendant now insists that by them, or rather by those which stated directly and by inference that death was caused by *delirium tremens,* the plaintiff is concluded; that not only had she no right to demand an assessment upon the members, but that she cannot maintain this action without first procuring the amendment of the proofs as to the cause of death. If this be so, the beneficiary's right to prosecute in any case wholly depends upon the ability to first obtain proofs which will bear the inspection of the officers of the association, or, failing in this, to secure a change or amendment when objection is made, without regard to the facts. The impracticability of this claim is evident from the condition of the proofs in the case at bar. There is a pronounced disagreement between the physicians, one stating the cause of death to be hemorrhage from the lungs, another as *delirium tremens,* while the third asserts it to have been a hemorrhage indirectly caused by intemperance. Such dissent between medical men is not unusual, and by what rule for weighing testimony should the real cause of death be determined, when "doctors disagree?" This certificate or policy simply provided for and required satisfactory

proofs of death; it did not prescribe the particular kind of proof. The fact of death should be established upon blanks to be furnished by the association, and to its satisfaction. It could not arbitrarily determine what would or would not be satisfactory proofs; that is for the court, in case of disagreement. *Taylor* v. *Ætna Life Ins. Co.*, 13 Gray, 434. When a policy provides that satisfactory proofs of death shall be furnished, it is not essential that the facts and circumstances of the death be set forth in said proofs. *Cluff* v. *Mut. Benefit Life Ins. Co.*, 99 Mass. 317. A company cannot arbitrarily object to the sufficiency of proofs. If, however, they disclose a cause of death which excepts the company from liability, it does not derogate from their sufficiency as proofs of death. And while such a disclosure might suggest to the company the propriety of refusing payment, it could be no bar to the bringing of a suit. *Insurance Co.* v. *Rodel*, 95 U. S. 232. The cause of the death of the assured is for the jury, to be determined, as any other question of fact, by the evidence produced upon the trial.

3. The plaintiff was not estopped by the mere fact that she had forwarded these affidavits. The physicians were not her agents, nor had she referred the company to them for information. In reply to a question propounded to her, she had given their names as those in attendance during the last sickness of her husband. The affidavits were made *ex parte*, by persons over whom plaintiff had no control, at defendant's request. They were forwarded upon the advice of its agent, and, if plaintiff is to be believed, on his assurance that they were "all right." In this case the plaintiff could show that death was from another cause than that stated in the proofs. The statements therein did not work an estoppel. *Keels* v. *Mut., etc., Life Ass'n*, 29 Fed. Rep. 198; *Sargent* v. *Home Benefit Ass'n*, 35 Fed. Rep. 711; *Parmlee* v. *Hoffman Fire Ins. Co.*, 54 N. Y. 193. The court did not err in its refusal to charge as requested by the defendant upon the weight the proofs were entitled to in the deliberations of the jurors, and also that they must be considered as admissions of the cause of death. Had occasion required, and for impeaching purposes, they could have been used as the admissions of those who had made them.

Order affirmed.