[No. 24539.   Department One.   June 21, 1933.]

MARY PAGNI, *Appellant*, v. NEW YORK LIFE INSURANCE COMPANY, *Respondent*.[1]

[1]Reported in 23 P. (2d) 6.

*George F. Hannan,* for appellant.
*Fred W. Catlett,* for respondent.

MILLARD, J.—On November 1, 1919, the defendant insurance company issued to Pietro Pagni a life insurance policy under the terms of which the insurer agreed to pay an annual income to the insured in the event he became totally and permanently disabled. The pertinent provisions of the insurance contract read as follows:

"Whenever the Company receives due proof, before default in the payment of premium, that the Insured, before the anniversary of the Policy on which the Insured's age at nearest birthday is 60 years and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days . . . then

"(1) Waiver of Premium.—Commencing with the anniversary of the Policy next succeeding the receipt of such proof, the Company will on each anniversary

waive payment of the premium for the ensuing insurance year, . . .

"(2) Life Income to Insured.—One year after the anniversary of the Policy next succeeding the receipt of such proof, the Company will pay the Insured a sum equal to one-tenth of the face of the Policy and a like sum on each anniversary thereafter during the lifetime and continued disability of the Insured. . . .

"(3) Recovery from Disability.—The Company may at any time and from time to time, but not oftener than once a year, demand due proof of such continued disability, and upon failure to furnish such proof, or if it appears that the Insured is no longer wholly disabled as aforesaid, no further premiums shall be waived nor income payments made."

The insurer also obligated itself to pay to the beneficiary (Mary Pagni, wife) named in the policy five thousand dollars on the death of the insured. The insured died June 25, 1931. Shortly thereafter, the beneficiary received from the insurer the amount payable on the death of the insured.

Mary Pagni, as assignee of the interest of her deceased husband's estate, brought this action to recover total permanent disability benefits for the period November 1, 1927, to November 1, 1930, which, she alleged, should have been paid to the insured. The defendant denied that the insured was totally and permanently disabled as defined in the policy, and denied that the insured had furnished to the insurer due proof of total and permanent disability. As an affirmative defense, the insurer alleged that the claim and proofs filed in 1927 disclosed that the insured was not totally and permanently disabled; that the insured abandoned that claim and filed another in 1931 under which the insured was entitled to disability benefits commencing November 1, 1931, and that the insured died June 25, 1931, which was prior to the time that payments under the disability provisions of the policy would be due. At the

conclusion of all of the evidence, the court sustained defendant's challenge to the sufficiency thereof and instructed the jury

" . . . that as a matter of law the proof submitted to the Company by Pietro Pagni in 1927 did not constitute due proof. . . . No liability arose thereon. You are instructed to bring in a verdict for the defendant."

Plaintiff appealed from the judgment of dismissal entered by the court on the directed verdict in favor of the defendant.

The facts are as follows, and clearly show that, in directing a verdict, the trial court erred, as there was evidence on behalf of the appellant upon an issue of fact determining the liability:

In 1927, J. H. McMath had been for eleven years a soliciting agent for respondent insurance company. In the early part of 1927, McMath knew that Pagni deemed himself entitled, under his insurance policy described above, to total and permanent disability benefits. Possessed of that knowledge and at the request of Pagni or of some member of Pagni's family, McMath obtained from respondent's local office in Tacoma the requisite blank forms for use of Pagni in making his claim. McMath testified that, as a condition precedent to the issuance to him by the local office of the forms for making the claim, he, McMath, was required to fill out a form apprising the respondent of the policy number, the claimant's name and address, "and everything before we can get a blank."

It was a practice or custom, of which the respondent had knowledge and which it apparently encouraged, of McMath to assist claimants in making out their claims after obtaining for them from respondent's local office the proper blanks therefor. McMath did not write Pagni's policy. However, other members of Pagni's

family were solicited, and their insurance policies written by McMath. During the time in question, McMath was delivering for respondent a disability payment monthly to one of the men residing with the Pagni family.

On August 27, 1927, the claim was executed by Pagni on the form secured for him by McMath from respondent's local office. The typing of the claim was done by Rena Pagni with the assistance of McMath; and, when completed, the form was signed by the insured. That claim, so far as material, reads as follows:

"Claim for Disability Benefits

"New York Life Insurance Company, 346 Broadway, New York, N. Y.

"Insured's Statement

" (1)  No. of Policy 6,595,967.  Date of Policy Nov. 1, 1919.

"Amount, $5,000.

" (2)  Give name in full:  Pietro Pagni.

. . . . . . . . .

" (8)  (a)  Are you wholly disabled at the present time?  Yes.

(b)  State cause of disability:  See Doctor's report.

" (9)  (a)  On what date did the illness begin that led up to present disability and what was the nature of the illness?  April 4th.

(b)  Give name and address of the first physician consulted at the beginning of that illness:  J. Griggs.

(c)  State date on which you first consulted that physician?  April 5th, 1927.

(d)  Give names of all other physicians consulted and dates of such consultations:  J. Griggs.

" (10)  From what date has your disability prevented you from engaging in any occupation whatsoever for remuneration or profit?  April 4th, 1927.

"(11) I expressly waive on behalf of myself and of any person who shall have or claim any interest in the above numbered policy, all provision of law forbidding any physician or any other person who has heretofore attended or examined me, from disclosing any knowledge or information which he thereby acquired.

"(Insured's Signature) Pietro Pagni

"Dated at Aug. 22, 1927."

The foregoing claim was filed by McMath with respondent's local office. Pagni's attending physician made the following report and sent same to respondent's local office, which transmitted both completed forms to respondent's general office in New York City:

"New York Life Insurance Company, 346 Broadway, New York, N. Y.

"Attending Physician's Report on Claim for Disability Benefits.

"(1) Name of Insured: Pietro Pagni.

"(2) Residence: 1552 So. E St., Tacoma, Wash.

"(3) Is insured now under your treatment? Since Apr. 23, 1927, have seen him professionally at office two or three times; previously at the house.

"(4) Date of first consultation in present disability? April 6th, first visit at the house.

"(5) History given you at that time? Then had an attack of 'Flu'—fever lasted 4 or 5 days.

   (a) Date of onset of present disability? April 4, 1927.

   (b) Predisposing cause, if any, of present disability: Old prostatitis, chronic tonsillitis, pyorrhoea. Last trouble has been attended to by dentist.

   (c) Names and addresses of any physicians previously consulted by insured: Charles Pascoe, Tacoma.

"(6) If you were consulted for any cause prior to the present disability, give dates and details of such consultations or treatments: Do not re-

collect—think he had a slight attack of 'Flu' during the epidemic, 1918.

"(7) Diagnosis and symptoms of disease, infirmity, or injury causing disability: Anaemia—nervous exhaustion, cystitis.

4/11/27—Pus in urine xxxx—Alb. xx

5/20/27—Pus in urine xxxx—Alb. trace

5/18/27—Haemoglobin 57%, Reds 2,900,000, Whites 16,600, Polys. 83%

"(8) (a) Is the insured in your opinion wholly disabled and prevented from engaging in any occupation whatsoever for remuneration or profit? Has been recuperating on the beach and not able to attend to his business this summer.

(b) If he is, from what date, to your knowledge, has he been so prevented. Apr. 4, 1927.

"(9) Give your opinion as to whether or not the insured will be permanently, continuously and wholly prevented for life from pursuing any and all gainful occupations, by reason of this disability: No.

"(Signature) Joseph F. Griggs, M. D.

"Dated August 22, 1927. Post Office Address: St. Helens Clinic, Tacoma, Wash."

Respondent conducted an independent investigation of Pagni's condition, and received a written report thereon dated September 6, 1927. Respondent's objection to production of that report was sustained, hence the record before us does not disclose the result of the respondent's investigation.

Respondent's Committee on Disability Claims, New York, N. Y., advised respondent's Tacoma office, by letter dated September 2, 1927, of disapproval of Pagni's claim on the ground that the claimant was not wholly and permanently disabled within the terms of the policy. That letter reads as follows:

"Please advise the insured that from the evidence submitted it does not appear to the Company that he is

wholly and permanently disabled within the meaning of the provision in the policy. It does not appear that he will be permanently, continuously and wholly prevented thereby, for life, from pursuing some gainful occupation. The Company does not feel justified, therefore, in approving claim for disability benefits.

"Explain to the insured that the provision in the policy referring to disability benefits applies to total disability of a permanent nature only, and not to total disability of a temporary nature."

Under date of September 13, 1927, respondent's local office requested soliciting agent McMath to advise Mr. Pagni of the rejection of his claim, and to explain to the claimant that disability benefits were payable only for total disability of a permanent nature. That communication to McMath reads as follows:

"Please advise the above insured that we have just received a reply from our New York Office in reference to the above claim for disability.

"From the evidence submitted it does not appear to the Company that the insured is wholly and permanently disabled within the meaning of the provision in the policy. It does not appear that the insured will be permanently, continuously and wholly prevented thereby, for life, from pursuing some gainful occupation.

"The Company does not feel justified therefore, in approving claim for disability benefits.

"Please explain to the insured that the provision in the policy referring to disability benefits applies to total disability of a permanent nature only, and not to total disability of a temporary nature."

There was testimony that, shortly subsequent to the receipt of the foregoing letter McMath visited Pagni for the purpose of informing him respecting the respondent insurer's attitude. McMath, in the presence of various members of the Pagni family, told the insured, but did not exhibit the respondent's letter, that the claim was rejected because the respondent "would not entertain any claim because Pagni had not been

sick for a year;'' that Pagni had to be "down and out" for a year before the company would consider his claim; that he had to "be in bed" for a year before the claim would be allowed.

McMath testified that he did not know the specific reason for denial of the claim. He did not tell Pagni that the claim was rejected because of the answer to question No. 9 in Dr. Griggs' report. McMath did not know what was contained in that report, which he never saw. The evidence is clear that Pagni did not, nor did McMath or anyone other than Dr. Griggs and those employees of respondent to whom the report was submitted, know what statements were made by Dr. Griggs in his report to the respondent; that is, not until May, 1932, when appellant and her family learned for the first time that the specific reason for the respondent's denial of liability in September, 1927, was Dr. Griggs' negative answer to the question:

"(9) Give your opinion as to whether or not the insured will be permanently, continuously and wholly prevented for life from pursuing any and all gainful occupations, by reason of this disability."

Appellant complained to the state insurance commissioner of the refusal of the respondent to pay to her after her husband's death the disability benefits which should have been paid to the insured for the period November 1, 1927, to November 1, 1930. In May, 1932, the state insurance commissioner advised the appellant of the receipt of information from the respondent that the reason for respondent's denial of liability in 1927 was the negative answer of the insured's attending physician to question No. 9, quoted above. The evidence of Dr. Griggs was not available, as he died in February, 1932, three months prior to the time appellant was informed by the state insurance commissioner of respondent's reason for denial of liability.

Dr. Mattson, who had been one of Pagni's attending physicians and at certain times had been an associate of Dr. Griggs, testified that, assuming the correctness of Dr. Griggs' report, the opinion given by Dr. Griggs was incorrect; that is, the answer to question "9" should have been in the affirmative. Dr. Mattson further testified that, in his opinion, a doctor who examined Dr. Griggs' report of 1927 would conclude that in August, 1927, Pagni was disabled so that he would be permanently, continuously and wholly prevented for life from pursuing any and all gainful occupations, and the only hope of relief would be a major operation. There was ample evidence to warrant a jury in finding that, from April 1, 1927, to June 25, 1931 (the date of his death), Pagni was totally and continuously disabled.

When Pagni was informed in 1927 by McMath of the rejection of his claim for disability benefits, he declared that he did not care to have anything more to do with insurance companies. McMath convinced the appellant that, to protect the policy in the principal sum of five thousand dollars, she should pay the premiums on the policy as they became due. Mrs. Pagni paid the premiums from November 1, 1927, to the date of her husband's death. In 1929, McMath was unsuccessful in his endeavor to induce Pagni, whose total disability continued, to file another claim.

In 1931, Pagni made another claim for disability benefits. In his proofs, he stated his disability commenced in 1929. The physician's report contained the same information. There was evidence that McMath, who talked to Pagni a time or two in 1928 anent the matter of increasing the latter's insurance, and who was frequently in Pagni's home, aided in the preparation of the claim. It is fairly inferable from the testimony that Pagni relied upon McMath as the respond-

ent's representative, and that McMath saw to it that, in the report of 1931, the date of the commencement of Pagni's total permanent disability was written "1929" instead of "1927."

Respondent concedes the proof of 1931 constituted "due proof," and insists that the claim would have been allowed if no change had occurred in the claimant's condition (Pagni died in June, 1931) prior to November 1, 1931.

Appellant insists that the proof furnished by the insured to the respondent insurer in 1927 constituted due proof of total and permanent disability. It is also contended that the respondent waived all questions as to the sufficiency of that proof because respondent failed to point out specifically any alleged deficiency; because, through its soliciting agent, respondent denied liability on other and different grounds; and because respondent conducted its own independent investigation.

It is the position of respondent that the policy required, as a prerequisite to any liability on the part of the insurer, the submission of due proof of total permanent disability; that "due proof" means such a statement of facts as makes out a prima facie case against the insurer; and that, as the proofs furnished affirmatively showed on their face that the insurer was not liable under the terms of the risk assumed, the insured did not furnish due proof of total permanent disability, hence there was no question of fact for the jury's determination.

Respondent argues: This is not a case of defective proof, but is a case where the insured claims disability, and sends in proof thereof only the certificate of his own physician stating the insured was not totally and permanently disabled; therefore, the insured did not, as the insurance contract required, submit proof of loss within the terms of the contract. If its soliciting

agent incorrectly reported to the insured the reason for the rejection of the claim, the insurer is not bound thereby, as the fault was that of the agent selected by the insured himself, who should have heeded the following printed notice on the insurance policy:

"It is not necessary for the Insured or the Beneficiary to employ the agency of any person, firm or corporation, in collecting the insurance under this Policy, or in receiving any of its benefits. Time and expense will be saved by writing direct to the Home Office, 346 and 348 Broadway, New York City."

Briefly, the position of respondent is that the insured was concluded by the proof of disability submitted by his attending physician, which disclosed, and the insured was so informed, that the insured was not totally and permanently disabled.

The position of the respondent is not tenable. If an insurance company denies all liability and the insured, relying upon such denial, omits to file a proof of loss—although such proof is required by the terms of the policy—such company will be deemed to have waived such proof, and will be estopped to offer in defense evidence of the fact that no proof of loss was filed. *Russell v. Granite State Fire Ins. Co.,* 121 Me. 248, 116 Atl. 554.

So, too, if an insurance company denies all liability, after claim filed and proof furnished in support thereof, and does not indicate its reason or gives a reason other than insufficiency of proof for denial of liability, and the insured, relying upon such denial, omits to file further or corrected proof of his claim of disability—although due proof of total permanent disability is required by the terms of the policy—such company will be deemed to have waived additional or corrected proof, and will be estopped to deny that due proof of disability as required by the policy has been

furnished. The provision of a policy requiring proof of total disability to be furnished the company within a certain definite time is waived, it was held in *Federal Life Ins. Co. v. Lewis,* 76 Okla. 142, 183 Pac. 975, 5 A. L. R. 1637, by the company denying liability within such time upon other grounds than failure to furnish proof of total permanent disability.

Where the denial of liability on the part of an insurance company is of such a character, or made under such circumstances, as reasonably to induce a belief that the submission of further proofs will be useless, a waiver of defects in, or insufficiency of, the proofs furnished and a waiver of the requirement to furnish additional proof will be effected. The insured is not concluded by the proofs submitted, and may, within the period of limitation, prosecute an action for collection of disability benefits. The waiver would not be affected by the submission of further proofs of disability after denial by insurer, under facts such as obtain in the case at bar, of liability after receiving first proofs of disability.

There was evidence that the insured was totally and permanently disabled from 1927 to the day of his death; and that his illness, as described by his attending physician in proof furnished to the respondent by the physician, was such as to presumably totally and permanently disable the insured. Claim of total permanent disability was made in good faith by the insured. Such proof as was required by the respondent was furnished by the insured. What the attending physician's report contained, none, save the physician and the respondent, knew. McMath did not know. That report disclosed, Dr. Mattson testified, a condition which constituted total permanent disability.

The attending physician's inadvertent or mistaken answer to question No. 9 that the disability was not

total and permanent, did not conclude the insured. If advised, as he should have been, that the physician's answer to question No. 9 was in the negative, and based thereon the respondent denied liability, the insured would have been afforded an opportunity, to which he was entitled, of submitting further proof, which would doubtless have established to the satisfaction of the respondent the fact that the insured was totally and permanently disabled. Not until May, 1932, almost one year subsequent to the death of the insured, did anyone other than respondent know why liability was denied. The Pagni family did not learn of the reason until after complaint to the state insurance commissioner that the respondent refused to pay the claim, as recited above.

The proof of disability did not, if Dr. Mattson is to be believed, disclose that the insurer was not liable. If Dr. Mattson's testimony is true, an examination of the attending physician's report and an investigation by the respondent would have ascertained that the attending physician's opinion was incorrect; that, based upon the facts recited in his report, his negative answer to question No. 9 was inadvertently or mistakenly made. In such a case as the one before us, the insured is not concluded by the wrong conclusion of the attending physician.

In *Hardie v. Metropolitan Life Ins. Co.*, 7 S. W. (2d) (Mo. App.) 746, the trial of an action on an employee's group insurance policy to recover total and permanent disability benefits resulted in a judgment for the plaintiff. Under the policy involved in that action, the insurance company could begin the payments for permanent disability and afterwards require of the insured due proof of the continuance of such disability. The failure of the insured to comply with that requirement barred further payments to him. The plaintiff made

application for benefits under the policy. The company admitted the claim, and paid a number of installments. Before the third annual installment was to be paid, the insurance company requested proof of plaintiff's present condition. The plaintiff did not comply with that or either of two more such requests of the insurer. Thereupon, the insurer requested the plaintiff's employer to cause the plaintiff to go to a Dr. Evans of that locality for examination, and furnished the physician with a blank for that purpose. The plaintiff was examined by the designated physician, who reported to the insurance company that there was no infirmity. Based thereon, the insurance company by letter advised the plaintiff that no further payment would be made; that is, disclaimed any further liability for permanent disability. In affirming the judgment in favor of the plaintiff, the court said:

"Plaintiff had been considered disabled in the beginning by defendant. He was again, in 1925, called upon to furnish some proof of his continued disability. It should be borne in mind that the policy provides that, notwithstanding the fact that proof of total disability may have been accepted by the company as suggested, yet the employee shall, at any time on demand from the company, furnish due proof of the continuance of such disability, and upon a failure to do so shall be deemed to have been recovered from the disability.

"As we view this matter, appellant's position that the demurrer to the evidence should have been sustained on this ground is not well taken. Under the policy, plaintiff was required to furnish 'due proof' of the continuance of his disability. Up to the time of his examination by Dr. Evans, he had failed to furnish any proof whatsoever. The company might well have stopped there and refused to pay, but at that point it took the matter out of the hands of plaintiff and furnished its own method of making proof. It designated a doctor, and called on plaintiff to submit to an exami-

nation; not only to submit to a physical examination, but to answer, such questions as might be propounded by the examiner. Plaintiff literally complied with this. He did go to Dr. Evans, and did answer the questions. Dr. Evans reported that plaintiff was sound, and defendant advised plaintiff of the disclaimer of further liability. It would have been idle for plaintiff then to have done more by way of furnishing proof. The insurance company, in effect, said to plaintiff: 'We have used our own method of finding the proof as to your disability. Our method shows that you are not disabled, and the matter is closed; we will not pay.' Upon such state of facts we conclude, after having had some difficulty on the question, that plaintiff could bring suit. Plaintiff did bring his suit. In that trial the triers of the facts found that Dr. Evans' report did not correctly show plaintiff's condition; that is to say, they weighed the evidence, and found plaintiff to be disabled, contrary to Dr. Evans' view.

"Now, what proof did plaintiff furnish? He submitted to defendant's method, to wit, of furnishing his body to the company's doctor for an examination and to answer questions submitted to him. The physician in this examination did ask plaintiff whether he was disabled, and plaintiff did state that he was suffering from his disability received in 1922 while under the protection of this policy. So we are of the opinion that defendant has waived the usual proof required by the policy and adopted its own method of having plaintiff examined by its own physician to obtain such proof. Plaintiff having submitted to that, and being then told that defendant disclaimed liability, was not required to go further, for it would have been idle to do so. On the trial he proved to the satisfaction of the jury that, when he produced his proof to Dr. Evans—that is to say, his oral statement and his person for examination —such did constitute due proof of disability, though Dr. Evans thought otherwise.

"It is to be noted that the policy does not require medical proof—that is, testimony of physicians—but only that plaintiff shall produce due proof of his continued disability.

"It has been held, in the case of *Carson v. New York Life Ins. Co.,* 162 Minn., 458, 203 N. W. 209, by the Supreme Court of Minnesota, that, where the plaintiff can obtain no other proof than his own testimony, he may stand on that to present his case in court, if it be not taken as due proof by the company.

"It is a well-settled rule that a denial by the insurer of all liability under the policy will operate as a waiver of the provisions requiring notice and proof of loss or of any defects in notice of proof. This principle has often been adopted by the courts of our state, and is not open to debate."

In *Union Mutual Aid Ass'n v. Carroway,* 201 Ala. 414, 78 So. 792, the insured recovered judgment against the insurer on an insurance contract under which the insurer agreed to pay the insured a stipulated weekly benefit in the event of his sickness. The contract provided that the insured should give notice and make proof of sickness by the filing of the attending physician's certificate, written upon the blanks furnished to policy holders in the office of the insurer. The contract limited indemnity to two weekly payments for la grippe or disability resulting therefrom in any twelve calendar months. The judgment was affirmed on appeal. The court, holding that the insured was not concluded by the incorrect conclusion of the attending physician, said:

"Under the clause of said contracts limiting liability to two weekly indemnities, for sickness designated la grippe, or for disability resulting therefrom, in any 12 calendar months, the illness of the plaintiff being shown, the burden of proof devolved on the defendant to show that his illness was la grippe or resulted therefrom, with consequent disability to plaintiff, and that defendant's liability therefor, that is, to pay not exceeding two weekly indemnities for and during the given 12 calendar months, had been discharged as per contract conditions. This limitation of liability, however, is in the nature of a forfeiture, for the benefit of

the assurer, and is defensive matter to be pleaded and proved by the defendant. *Equitable Life Assur. Society v. Golson, supra* [159 Ala. 508, 48 South. 1034]; *Continental Casualty Co. v. Ogburn, supra* [175 Ala. 357, 57 South. 852, Ann. Cas. 1914D, 377]; 25 Cyc. 925 *et seq.*

"The proof of sickness was made by giving the notice and filing the certificate of the attending physician, as per contract stipulations. That the certificate contained a declaration against interest as to the cause or nature of plaintiff's illness is not conclusive proof of the matter admitted. On the trial the plaintiff in such a case is not estopped to show that the misstatement in the proof as to the nature or cause of his illness was the result of mistake or ignorance, or was made under a misapprehension of the facts; that is, in the absence of facts creating an estoppel, as that the assurer has changed its position to its detriment in reliance on the statement of facts contained in the proofs furnished by the plaintiff, the assured may show the truth, and that the erroneous statement thereof contained in the proofs was the result of ignorance, mistake, or misapprehension of the true facts. 4 Cooley's Briefs, p. 3433 *et seq.;* 2 May on Insurance, § 465; 29 Cyc. 150; 8 Rose's Notes (U. S. Rep.) 491, 493; 13 Am. & Eng. Ency. Law (1st Ed.) 65; *Knights Templars v. Crayton,* 209 Ill. 550, 70 N. E. 1066; *Supreme Tent v. Stensland,* 206 Ill. 124, 68 N. E. 1098, 98 Am. St. Rep. 137; *Modern Woodmen v. Davis,* 184 Ill. 236, 56 N. E. 300; *Bentz v. North Western,* 40 Minn. 202, 41 N. W. 1037, 2 L. R. A. 784. Such preliminary proofs presented to an insurance company by an assured, in compliance with the conditions of the policy, are admissible as prima facie evidence of the facts stated therein, against the assured. *Mutual Life Ins. Co. v. Newton,* 22 Wall. 32, 22 L. Ed. 793." *Union Mutual Aid Ass'n v. Carroway,* 201 Ala. 414, 78 So. 792.

In *Federal Life Ins. Co. v. Lewis,* 76 Okla. 142, 183 Pac. 975, 5 A. L. R. 1637, the insurance contract contained a disability provision requiring, as does the contract in the case at bar, the insured to furnish due

proof of total permanent disability within a stated time. The insurer insisted that it was relieved of liability by reason of the failure of the insured to furnish due proof of total permanent disability. The court said:

"The accident occurred in April; the premium was not due until September 30th. The plaintiff stated that he talked to the state agent twice during that time, and the agent informed him that he did not come within the clause as provided in the policy. At no time did the agent inform him in regard to the proof necessary, nor what proof was required, nor that the company would furnish blanks to make out his proof thereon, but denied liability in that plaintiff did not come within that clause. Our court has held in the case of *Oklahoma Fire Ins. Co. v. Wagester,* 38 Okla. 291, 132 Pac. 1071, and *American Nat. Ins. Co. v. Donahue,* 54 Okla. 294, 153 Pac. 819:

" 'A provision in an insurance policy requiring proof of loss to be furnished the company within a certain definite time is waived by the company denying liability within said time upon other grounds than failure to furnish proof of loss.'

"The sister of the plaintiff also informed the company, as to the condition of the plaintiff, and when the plaintiff demanded of the state agent upon two occasions to fix the policy, to give him the benefit of the total disability clause, the state agent replied that he did not come within the provision of said clause. This was a denial of liability." *Federal Life Insurance Co. v. Lewis,* 76 Okla. 142, 183 Pac. 975, 977, 5 A. L. R. 1637.

*Carson v. New York Life Ins. Co.,* 162 Minn. 458, 203 N. W. 209, was an action upon a disability benefit insurance policy. The appeal was prosecuted by defendant insurance company from judgment in favor of the plaintiff. The life insurance policy involved in that case provided for payment of a specified annual income upon due proof that the insured had become

wholly disabled by bodily injury or disease, "so that he will be presumably thereby permanently, continuously prevented from engaging in any occupation whatsoever for remuneration or profit." The policy contained the following provision, which is, word for word, the same as the above-quoted provision No. 3 in the policy in the case at bar:

"The company may at any time and from time to time, but not oftener than once a year, demand due proof of such continued disability, and upon failure to furnish such proof, or if it appears that the insured is no longer wholly disabled as aforesaid, no further premiums shall be waived nor income payments made."

The contract in that case, like the one in the case at bar, was so drawn that, as stated by the court,

". . . a decision either by the parties or the court that disability exists and will presumably permanently exist is not conclusive, but, at any time, income payments may cease if the insured, when called upon, fails to prove that it continues or the insurer proves that it does not exist. . . . The proof furnished and accepted, or the judgment establishing disability entitling the insured to the income payment, is not conclusive as to future income payments."

In the foregoing case, the opinions of the doctor, like the opinion of Pagni's attending physician in the case at bar, did not corroborate the conclusion of the insured that he was totally and permanently disabled. The supreme court of Minnesota held that, when the proof the insured presented to the insurer was found true in the trial of his action upon the policy, such proof would be deemed sufficient as due proof under the requirements of the policy. The court said:

"The second contention is that the proof furnished did not make out a prima facie case of disability. Where a policy is payable upon due proof of death of the insured, it is readily seen that, as a rule, no trouble

is met with in furnishing conclusive proof. But, in a case of this nature, where the insured may not be able to obtain other testimony than his own of a disability which entitles to the insurance, we do not think he should be debarred from presenting his proof in court, if it be not taken as due proof by the company. The policy does not provide such an unreasonable requirement as that the proof of loss must be satisfactory to the insurer. It simply provides for due proof. It does not call for medical proof. The company was advised of the accident and the claim that plaintiff was disabled. His own affidavit of disability was furnished defendant in time, on May 5, 1921, wherein he states that he has been wholly disabled since the twenty-fourth of November, 1920 (the time of his injury), 'and will presumably be permanently, continuously and wholly prevented thereby for life from pursuing any and all gainful occupations'; and he therefore claimed the disability benefit under the policy. That neither the physician who attended him, nor the one designated by defendant to give an opinion, then thought the disability permanent, and so stated in their affidavits, should not conclude plaintiff. That was only their opinion which, according to the finding of the court and jury, proved incorrect. It must, therefore, be held that, when the proof plaintiff did present to defendant by his own affidavit of total permanent disability has been found true, it should be deemed sufficient as due proof under the requirements of the policy, even though he was unable to be fully corroborated by the opinions of the doctors mentioned.''

In *Fields v. Equitable Life Assurance Co.*, 195 N. C. 262, 141 S. E. 743, the plaintiff brought an action to recover disability benefits under the terms of an insurance policy similar to the one under which appellant claims indemnity should have been paid to her husband. In the case cited, the insurer allowed the claim of the insured for indemnity. Pursuant to the terms of the policy, a blank form designated as proof of continuance of disability was filled out by the at-

tending physician of the insured. Question 5 in that form was as follows:

"Do you believe that, as the result of a bodily injury or of disease, the insured is now and will be permanently, continuously and wholly prevented thereby from performing any work for remuneration or profit, or from following any gainful occupation?"

The attending physician answered that question on the form as follows: "Able to perform light work on farm; not permanently disabled."

Acting upon that proof of disability, the insurance company declined to make further payment to the insured, and advised him in writing that the "policy has been restored to a premium-paying basis, and no further installments will be paid." Three months after receipt of the foregoing notification, the insured commenced an action against the insurer, alleging that he was wholly and permanently disabled, and therefore entitled to the disability compensation provided in the contract. Plaintiff appealed from judgment of nonsuit.

The insured contended that the proof of disability submitted by his attending physician to the effect that the insured was not permanently disabled was not a correct statement of the true facts, for the reason that, since his first attack in 1922, he had been wholly and permanently disabled thereafter. At the trial, the insured offered evidence tending to show that he was permanently disabled, and his physician, who furnished the proof of disability (quoted above) on April 25, 1923, testified that, when he used the expression "not permanently disabled," he meant that the insured was not confined to his bed. The proof of permanent disability furnished by the insured on April 25, 1923, and his testimony and that of his physician at the trial were conflicting. The supreme court of North Carolina held

that, in such cases, the question of permanent disability was one of fact for the jury; that, while the insured vouched for the truth of proofs of loss filed by him, he was not concluded by such proofs, though the burden was upon him to show that a statement made in the proofs of loss was erroneous in fact.

In *Wallin v. Massachusetts Bonding & Ins. Co.*, 152 Wash. 272, 277 Pac. 999, we held that, though the original proofs (prepared by the beneficiary under an accident policy) introduced in evidence contained admissions making a prima facie showing that the death of the insured, while accidental, was due to an excepted hazard, the plaintiff beneficiary was not precluded from showing by evidence at the trial that the representations were made in ignorance of the true facts. We said:

"We are committed to the rule which permits the statements in the proofs of loss to be contradicted on the trial, when it does not appear that the usual elements of estoppel are present. In *Armstrong v. Modern Woodmen of America*, 93 Wash. 352, 160 Pac. 946, in an action upon a contract of mutual benefit insurance, it is said:

" 'Statements made in the proofs of death are not conclusive on the beneficiary, in the trial of the case, in the absence of facts creating an estoppel. The beneficiary has the right to controvert the statements made in the proofs of death.'

"Very few authorities are in harmony with the strict and narrow interpretation contended for by appellant. The facts in this case do not justify any modification of the rule enunciated in *Armstrong v. Modern Woodmen of America, supra*. The beneficiary under an accident insurance policy may explain, qualify or correct the original proofs of loss, 'in the absence of facts creating an estoppel,' not only five days before the trial of her action, but by evidence during the trial."

In *Fagerlie v. New York Life Ins. Co.*, 129 Ore. 485, 278 Pac. 104, the defendant appealed from a judgment

in favor of the plaintiff in an action to recover disability benefits under the terms of a policy like the one in the case at bar. The policy involved in the first cause of action in the case cited provided for payment of disability benefits,

"Whenever the Company receives due proof . . . that the insured, . . . has become wholly disabled by bodily injury or disease, so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days."

Plaintiff filed with defendant a claim for disability resulting from a bullet passing through his left lung. That claim was signed by the insured and accompanied by a statement signed by the claimant's physician. On the statement furnished by the physician was the question:

"What is your opinion as to whether or not the insured by reason of his disability will be permanently, continuously and wholly prevented thereby for life from pursuing any and all gainful occupations?"

The physician's answer to that question was:

"Not permanently disabled. Lung chest wall was opened and drained and there will probably be a permanent weakness in that lung."

The report of the claimant and the report of the physician were, as in the case at bar, made on forms supplied by the insurer. The insurer informed the insured by letter, about six weeks subsequent to receipt of the claim and proofs of disability, that it did not appear to the company that the insured was wholly and permanently disabled within the meaning of the provision in his policy referring to disability benefits; that

" . . . it does not appear that you will be permanently, continuously and wholly prevented thereby, for life, from engaging in a gainful occupation. Claim for disability benefits under this policy is therefore disallowed."

The defense of the insurer in that case, as in the case at bar, was that it never received the proof required by the policy as a condition precedent to the right of the insured to disability benefits under the policy, and that the insured had never been wholly and permanently disabled as defined by the policy. In that case, as in the instant cause, the insurance company did not point out to the insured any defect in the form or contents of the proof of loss submitted by the insured, nor did the insurer inform the insured that any paper or form furnished by him was deficient in any particular. There, as here, all that the insurer did was to deny liability on the ground that the insured was not, as a matter of fact, permanently and totally disabled. The attending physician testified that, in using the expression "permanently disabled," he meant to convey the impression that at some time the insured might be able to perform some light work.

Affirming the judgment, the court held that failure of the insurer to point out particularly any defects upon which it intended to rely precluded objection thereafter on the part of the insurer to the sufficiency of the proofs furnished; and that, while the physician's statement appearing in the proof of loss was evidence against the insured, the statement was not absolutely binding on the insured, but may be explained or corrected. The court said:

"Plaintiff contends that the proof of loss submitted in the case was sufficient.

"It is stated in 33 C. J. 17, as follows:

" 'The object of the proofs is to furnish the company with the particulars of the loss and all data neces-

sary to determine its liability and the amount thereof.'
. . .

"Counsel for plaintiff contends that the plaintiff is not bound by the literal statement of his physician. In the present case it appears that Dr. Ziegler was unfamiliar with the technical meaning of the terms employed in the policy and in his statement.

"The authorities seem to agree that a statement of the physician appearing in the proof of loss, while evidence against the insured, is not absolutely binding upon him, but the same may be explained or corrected. 33 C. J. p. 18, § 666, states the rule as follows:

" 'As against insured or the claimant under the policy, however, the notice and proofs are *prima facie* evidence of the statements contained therein, and they are binding on him unless withdrawn or corrected, or contradicted, or explained.'

"There is contained in this section the further statement upon which defendant replies as follows: 'And the contents of the notice or proofs cannot be corrected or denied for the first time at the trial of an action on the policy.' This is based upon the cases of *Campbell v. Charter Oak F. & M. Ins. Co.*, 10 Allen (Mass.) 213, opinion rendered in 1855, and *Irving v. Excelsior F. Ins. Co.*, 14 N. Y. Super. Ct. 507, decided in 1857.

"If the additional statement and opinions referred to mean that the statement of the physician in the present case could not be explained by the sworn testimony of Dr. Ziegler as to what he meant by 'permanent disability,' then we are bound to conclude they are not in conformity with the modern overwhelming weight of authority. Upon principle we think the weight of authority should be favored.

"In *Denver L. Ins. Co. v. Price*, 18 Colo. App. 30 (69 Pac. 313), it appears that a physician making proof of death of insured stated that he died of paralysis of the heart, due to an overdose of phenacetin, a narcotic, the use of which was prohibited by the policy. It was held that the act of the beneficiary in answering a question in the proof of loss, as to the cause of death, by referring to the physician's statement, did not estop her from denying that the physician stated the

true cause. See, also, *Redmond v. Industrial Ben. Ass'n,* 150 N. Y. 167 (44 N. E. 769); *Barker v. Met. L. Ins. Co.,* 198 Mass. 375 (84 N. E. 490); *Hancock Mut. Life Ins. Co. v. Dick,* 117 Mich. 518 (76 N. W. 9, 44 L. R. A. 846).

"Ordinarily any evidentiary statement can be explained. We see no reason why the doctor could not explain what he meant by his statement, as well as any witness in court could explain the meaning of his testimony, a right which a witness always has. The doctor's certificate is short, and his conclusion does not seem to agree with the law, as found in the books. It is not claimed that the certificate was in fact false. . . .

"The company did not deny liability for want of proof of permanent disability but the denial was based upon the proof and other information.

"The rule in regard to proof in such cases is stated in *Schmurr v. State Ins. Co.,* 30 Or. 29 (46 Pac. 363), by former Mr. Justice Bean, as follows:

" 'The law is settled that where the assured, in attempting in good faith to comply with the provisions of a policy, furnishes to the insuring company, within the time stipulated, what purports and is intended to be proof of loss, the company must point out particularly any defects therein if it intends to rely upon them. If it fails to do so, objection cannot thereafter be made to its sufficiency.'

" (See 33 C. J. 32, § 694 *et seq.;* 7 Cooley's Briefs on Insurance (2d Ed.) p. 5943; *Great Am. Ins. Co. v. Harrington,* 127 Okl. 13 (259 Pac. 582); *Davis v. Yorkshire Ins. Co.,* 221 Mo. App. 798 (288 S. W. 80). . . .

"Under the circumstances of this case we think the original proof of loss satisfied the demands provided for in the policies."

■ Citing as sustaining authority *Ferdenando v. Milwaukee Mechanics' Ins. Co.,* 81 Wash. 244, 142 Pac. 693, respondent contends that its soliciting agent McMath was governed by his written authority issued to him by the insurer; and that, as such agent, McMath had no power to waive any provision of the policy.

In the case cited, we held that an insurance agent has no power to waive proofs of loss under an insurance policy,

". . . where the only authority relied upon is proof of the fact that he solicited the insurance and, having received it, delivered the policy to the insured."

We said, however, that:

"Where there is proof of apparent authority or custom, or other facts justifying the finding that the company had clothed its soliciting agent with such authority, a different question is presented. But no such proof is present or offered in this case."

In the case at bar, there was evidence of apparent authority—a custom of which the insurer had knowledge, a course of conduct which it sanctioned—which would warrant a jury in finding that the insurer had clothed its soliciting agent with authority to act for it as he did.

We are not unmindful of the general rule that a soliciting agent is merely a special agent authorized

". . . only to solicit insurance, submit applications therefor to the company, and perform such acts as are incident to that power. . . . but *ordinarily has no authority* to bind it by attempted acts or contracts in its behalf, relating . . . to other matters not connected with the application and not within the real or apparent scope of his authority, . . ." (Italics ours.) 32 C. J. 1067, § 145.

There is another rule which should not be overlooked. It must be borne in mind, when considering the general rule quoted above.

"As in the case of agencies in general, an insurance company is bound by all acts, contracts, or representations of its agent, whether general or special, which are within the scope of his real or apparent authority, notwithstanding they are in violation of private instructions or limitations upon his authority, of which the

person dealing with him, acting in good faith, has neither actual nor constructive knowledge." 32 C. J. 1063, § 140.

In holding that an insurer was liable for soliciting agent's conduct within the apparent scope of his authority in the absence of evidence that the one relying thereon knew of the agent's limitations, the court said in *Continental Casualty Co. v. Linn,* 226 Ky. 328, 10 S. W. (2d) 1079:

"Soliciting agents are intrusted with power to obtain business for the companies they represent, and the consequent profits of the companies are obtained by them. An insurance agent represents his company and stands in its place in his community. Ordinarily, he is the only person the policyholder knows and deals with in his transactions with the insurer. He is dealt with on the faith of his authority to do those things which he claims and has the ostensible right to do."

It was the duty of the respondent to see to it that none but its regular authorized agents, and they only, transacted for it business such as that handled by McMath, the soliciting agent. True, the mere assumption of authority to act for an insurance company will not, of itself, charge the insurance company with responsibility for the acts of the assumed agent. If, however, as in the case at bar, an insurance company avails itself of such acts, and the insurance company is aided thereby in its insurance business, the existence of the relationship of principal and agent may be assumed as against such company; and the company is charged with responsibility for the acts of that agent.

As in the case of other agencies, an insurance company will be estopped to deny that a certain person is its agent or possesses the authority he assumes to exercise, where the insurance company knowingly causes or permits him so to act as to justify a third person of

ordinarily careful and prudent business habits to believe that he possesses the authority exercised.

Let us recognize what common experience teaches. Pagni, as men commonly do, and as the insurer knew, did all of his insurance business with the insurer's soliciting agent. McMath did everything that was done on behalf of the respondent company except pass on the claim. He was the only representative of the company with whom the insured had any dealings. The insured doubtless knew that McMath was a soliciting agent, but Pagni was ignorant of the limited authority of the agent to represent the insurer. McMath was, as respondent's representative, paying monthly benefits to a member of Pagni's household. McMath had written insurance for others in that household. McMath was endeavoring, even during the time of the disability of the insured, to write more insurance on Pagni's life. McMath obtained the blanks and assisted in the preparation of Pagni's claim for disability benefits. As recited above, McMath was directed by his company to inform the insured of disapproval of the claim for disability. To Pagni, McMath was the insurance company's agent in all insurance matters. There was nothing to charge him with notice of the agent's limited authority.

In *Mangiameli v. Southern Surety Co.*, 111 Neb. 801, 197 N. W. 946, one Turney was a soliciting agent of the defendant insurer. A life, accident and health insurance policy issued by the defendant to the plaintiff was written by Turney. The policy provided, as a condition precedent to the payment of sick benefits, that written notice of sickness on which a claim might be based must be given to the company within ten days after the commencement of the disability from such sickness; that, if the insured were disabled by illness for more than thirty days, he or his representatives

should furnish the company every thirty days, or as near thereafter as was reasonably possible, with a written report from his attending physician fully stating the condition of the insured and the probable duration of disability. Soliciting agent Turney collected the monthly premiums on the policy for approximately five years.

Illness disabled the insured. Shortly after he became ill, and on several occasions during the illness of the insured, the soliciting agent called upon him and told him not to bother about notice to the company, as he, the agent, "will take care of you." The company did not receive notice of the illness of the insured, and on that ground refused to pay sick benefits. The plaintiff recovered a judgment against the insurer for sick benefits, despite the defense of non-liability because of the failure of the plaintiff to comply with the provision of the policy respecting notice of sickness. Following the provisions of the policy respecting notices of sickness, the policy provided:

"Such notice given by or on behalf of the insured or beneficiary, as the case may be, to the company at St. Louis, Missouri, or to any authorized agent of the company, with particulars sufficient to identify the insured, shall be deemed to be notice to the company."

The court held that, under the provision quoted, a written notice of sickness served upon the soliciting agent would have been a compliance with the terms of the policy; that, having authority to do some acts for the company in connection with the subject of notice of sickness, it was within the scope of the soliciting agent's apparent authority to accept for the company the oral notice and waive the written notice required by the insurance contract.

In principle, the case cited is not distinguishable from the case at bar, in which McMath was authorized,

if the testimony is true, to act for his company as its representative in the matter of preparing claims, etc., as recited above.

*Jones v. New York Life Ins. Co.,* 158 Wash. 12, 290 Pac. 333, relied upon by respondent, is not in point. We there said that the evidence failed to show that the insured at any time "sought disability benefits under the policy as total permanent disability benefits until she presented her proofs to the company in April and June, 1928," the sufficiency of which was recognized by the insurer and her claim allowed.

The judgment is reversed, and the cause remanded with direction to grant the motion for a new trial.

HOLCOMB, MITCHELL, BLAKE, and MAIN, JJ., concur.

